193 P.3d 1260

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**John P. SOUZA, Defendant–Appellant.**

**No. 27037.**

Intermediate Court of Appeals of Hawai'i.

Aug. 7, 2008.

As Corrected Sept. 4, 2008.

Walter R. Schoettle, on the briefs, Honolulu, for Defendant–Appellant.

Joanne L. Ha'o, Deputy Attorney General, Department of the Attorney General, on the briefs, for Plaintiff–Appellee.

WATANABE, Presiding Judge, FOLEY, and NAKAMURA, JJ.

Opinion of the Court by NAKAMURA, J.

Defendant–Appellant John P. Souza (Souza) appeals his convictions for willfully [1] filing false tax returns and for theft by deception of the tax refunds he received. At trial, Souza sought to introduce documentary evidence which he claimed would show that based on his good-faith understanding of the tax laws, he did not believe his tax returns were false. The Circuit Court of the First Circuit (circuit court) [2] excluded the evidence on the grounds that Souza's tax theories were irrelevant and would confuse the jury. The circuit court concluded that Souza's tax theories were questions of law for a court to decide and not matters properly considered by the jury.

We hold that the circuit court harmfully erred in excluding certain documentary evi-

1. The word "willfully" can be spelled alternatively as "wilfully." We will use "willfully" except when quoting a statute that uses the alternative spelling.

2. The Honorable Michael D. Wilson presided.

dence Souza offered to show his understanding of the tax laws because the evidence was admissible on the issues of whether Souza willfully filed false tax returns and obtained the refunds by deception. We reject Souza's claims that there was insufficient evidence to support his convictions and that the trial court should have sua sponte entered judgments of acquittal. Accordingly, we vacate Souza's convictions and remand the case for a new trial.

## BACKGROUND

### I. Statement of Background Facts

The charges against Souza arise out of the Hawaiʻi income tax returns he filed for 1999 and 2000. During those years, Souza was employed by First Insurance Company (First Insurance). He earned $46,066 in wages from First Insurance in 1999 and $47,379 in wages in 2000. Souza submitted documents to First Insurance demanding that no federal or state income taxes be withheld from his wages. He claimed to be exempt from the withholding requirements because he had no income tax liability. Colleen Houghtailing, a payroll administrator for First Insurance, checked with the State of Hawaiʻi Department of Taxation (State Department of Taxation) and advised Souza that an employee could not claim to be exempt from Hawaiʻi income tax withholding. She further advised Souza that First Insurance would be penalized if it failed to withhold state taxes from his wages. Houghtailing told Souza that if he did not submit a revised Hawaiʻi income tax withholding form, First Insurance would have to assume that he had no exemptions and withhold at the highest rate. Souza did not submit a revised form and First Insurance withheld his state income taxes at the highest rate.

Souza did not file a federal Form 1040 (U.S. Individual Income Tax Return) for 1999 or 2000. However, in filing his Hawaiʻi income tax returns for 1999 and 2000, he used State Department of Taxation Form N–11—a form that should only be used by individuals filing a federal tax return for the same year. On line 7 of Form N–11, taxpayers are supposed to report the amount entered for adjusted gross income on their federal return. On his 1999 Form N–11, Souza entered zero on line 7, reported a negative taxable income,[3] and claimed a refund of $2,962. On his 2000 Form N–11, he left line 7 blank, reported zero taxable income, and claimed a refund of $3,418. The refund Souza claimed on each of the 1999 and 2000 returns equaled the total amount of Hawaiʻi income taxes that had been withheld from his wages for that year. The State of Hawaiʻi issued refund checks to Souza in the amounts claimed on his returns, and Souza cashed or deposited the checks.

Souza had previously filed a Hawaiʻi income tax return using State Department of Taxation Form N–12—a form applicable to individuals who are not filing a federal tax return for that year. Unlike Form N–11, Form N–12 specifically requires taxpayers to report their wages. In 1997, Souza filed a 1996 joint Hawaiʻi income tax return on Form N–12, in which he and his wife reported joint wages and salaries of $60,010 and joint taxable income of $61,204.

After Souza filed his 1999 and 2000 Hawaiʻi income tax returns, he was contacted by Stephen Hironaka, a criminal tax investigator for the State Department of Taxation. Souza told Investigator Hironaka that Souza was going to amend his Hawaiʻi returns, but no amended returns were filed.

### II. Pretrial Proceedings

Souza was indicted on two counts of willfully filing a false tax return, in violation of Hawaii Revised Statutes (HRS) § 231–36(a) (2001)[4] (Counts 1 and 2), and two counts of

---

3. State Department of Taxation forms for income tax returns indicate that the amount entered for taxable income should not be less than zero.

4. HRS § 231–36(a) (2001) provides in relevant part:

§ 231–36 **False and fraudulent statements; aiding and abetting.** (a) Any person who wilfully makes and subscribes any return, statement, or other document required to be made under title 14 [ (entitled "Taxation") ] ... which contains or is verified by a written declaration that it is true and correct as to every material matter, and which the person does not believe to be true and correct as to every material matter shall be guilty of a class C felony. . . .

second-degree theft by deception, in violation of HRS §§ 708–830(2) and 708–831(1)(b) (1993) [5] (Counts 3 and 4). Counts 1 and 2 charged that Souza "willfully made and subscribed ... an individual income tax return (Form N–11)" for the calendar years 1999 and 2000, respectively, "which contained or was verified by a written declaration that it was true and correct as to every material matter, and which [Souza] did not believe to be true and correct as to every material matter." [6] Counts 3 and 4 charged that Souza "did obtain and exert control over the property of the State of Hawaii the value of which exceeds $300.00 ... by deception with intent to deprive the State of Hawaii of the property." The property allegedly obtained by deception in Count 3 was a 1999 tax refund in the amount of $2,962 and in Count 4 was a 2000 tax refund in the amount of $3,208.

Souza elected to represent himself. Standby counsel was appointed to assist Souza if called upon by Souza. Souza moved to dismiss the case for "want of lawful jurisdiction" of the circuit court. Souza's contention that the circuit court lacked jurisdiction was based in part on his claimed citizenship in the Kingdom of Hawai'i and his renunciation of citizenship in the United States of America and the State of Hawai'i. The circuit court apparently denied Souza's motion to dismiss.[7]

The prosecution moved in limine for "[a]n order precluding [Souza] from presenting evidence or argument to the jury that the Court does not have jurisdiction over the defendant." The prosecution argued:

This is an income tax fraud case and pursuant to [HRS] Section 235–4, [8] [Souza] is subject to the tax laws of this State irrespective of his personal views about the matter.

The circuit court granted the prosecution's motion in limine, ruling that Souza was precluded from raising the issue of whether the court had jurisdiction over him during the trial.

Souza then asked whether he would be able to refer to a document he submitted in 1996 to various agencies which contained legal research on the obligation to pay taxes.[9] Souza explained that separate and apart from his jurisdictional claim, the document set forth legal research and analysis on which he formed his belief that he was exempt from paying taxes. Souza further explained that he also relied on the agencies' failure to respond to his document in forming

---

5. HRS §§ 708–830(2) and 708–831(1)(b) (1993) provide in relevant part:

 § 708–830 Theft. A person commits theft if the person does any of the following:
 ....
 (2) Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.

 § 708–831 Theft in the second degree. (1) A person commits the offense of theft in the second degree if the person commits theft:
 ...
 (b) Of property or services the value of which exceeds $300[.]

6. Counts 1 and 2 of the indictment did not specifically identify the material matters that were alleged to be false on Souza's 1999 and 2000 Hawai'i income tax returns. The prosecution, however, proposed jury instructions that identified the material matter alleged to be false on both returns as the information that Souza's taxable income was zero. The circuit court gave instructions to the jury at the end of trial that identified the information contained in the returns that Souza's taxable income was zero as the material matter that was alleged to be false

on his returns. We will consider Souza's appeal in light of the instructions given to the jury.

7. In his opening brief, Souza asserts that his motion to dismiss for lack of personal jurisdiction was denied by the circuit court at a hearing, but the transcript of that hearing was not made part of the record on appeal. Souza's brief states that he is not raising the issue of the circuit court's denial of his motion to dismiss on appeal.

8. HRS § 235–4 (2001) provides in relevant part:

 § 235–4 Income taxes by the State; residents, nonresidents, corporations, estates, and trusts. (a) Residents. The tax imposed by this chapter applies to the entire income of a resident, computed without regard to source in the State.
 (b) Nonresidents. In the case of a nonresident, the tax applies to the income received or derived from property owned, personal services performed, trade, or business carried on, and any and every other source in the State.

9. Souza was apparently referring to his Exhibit O, which he later attempted to introduce at trial, but which was excluded by the court. See discussion infra.

this belief. The circuit court ruled that Souza's contention that certain laws justified his non-payment of taxes was not a matter he could raise before the jury.

MR. SOUZA: What I am gathering, sir, you're saying that I cannot refer to that document that I submitted?

THE COURT: That's correct.

MR. SOUZA: At all in my case?

THE COURT: That's correct.

. . . .

MR. SOUZA: Well, in the document that I submitted, sir, in the public notice document, there are references of liabilities to taxes in those documents, okay? Now, I'm not gonna be able to use those references because it's part of the document?

THE COURT: Well, you'll have to be a little more clear with me about—

MR. SOUZA: *Without me saying that I'm a Hawaiian citizen, okay, there are legal issues in that document that basically give—that quote the actual court cases and everything pertaining to liability of income taxes, okay? And this document was submitted, as I stated, in 1996, July of 1996, to nine different agencies who had 30 days to answer me. None of them—every one of them defaulted. My mind-set basically, insofar as liability, is based on a lot of information not in the document, in the document not necessarily just being a Hawaiian citizen. It makes reference to actual case law.* It isn't something that a bunch of Hawaiians got together and decided that they weren't gonna do this. Now, I'm asking you am I able to use that reference that's in that document, that's what I'm asking the Court.

. . . .

MR. SOUZA: May I just give you an example, sir? I'm just trying to get—to make it more clear.

THE COURT: Yes, you can.

MR. SOUZA: In the document on page 22, item 34, reference is the Victory Tax of 1942, 56 statute, chapter 619, page 884. On October 21st, 1942, which implemented the withholding and the 1040 requirements, return requirements, and it stated:

On section 476, the taxes imposed by this subchapter shall not apply with respect to any taxable year after the date of session [sic] of hostilities in the present war, World War II. On May 29th, 1944, 58 statutes at large, chapter 210, section 6A repealed the victory tax, on page 234. The victory tax and its provisions for withholding were repealed. With the repeal of the victory tax, the individual income tax became voluntary. Our tax system is based on voluntary assessments and payment and not upon the strength of the supreme court ruling, Flora versus United States.

So these are the things that I mentioned about on it. I'm not gonna be talking about I'm a Hawaiian, no matter what it is, you do not have any jurisdiction over me, but all of this whole—this whole things insofar as liability is part of these documents, and if I should trespass into the area of aligning with Hawaiian sovereignty, I would assume the Court will correct me.

. . . .

THE COURT: . . . Mr. Souza, thank you for that clarification, because I think this is helpful to make it clear what—let me just take your example, and then you can move on if you have another question. *The position that you would take that there are certain laws that have been passed that would justify you not paying taxes is a legal position, and you are given the opportunity to raise those issues, certainly you'll be given the opportunity if you're convicted in our appellate courts, either the intermediate court or the supreme court, that would take the issue or if you attempt to raise those issues as well in a federal jurisdiction, then you would address it to a court, to a judge, in that jurisdiction, but those are not issues for a jury to decide.*

And if you would find it helpful, you can have some further discussion with [standby counsel] about that before we get going with the jury so he can help explain it to you, *but that is an example that you have cited and legal matter that would not be appropriate for the jury.* . . .

. . . .

MR. SOUZA: Well, see, the thing about it, sir, is I'm being charged for theft and for falsifying documents, okay, and my whole approach to this was basically from my research of these particular cases, okay, rulings by the higher courts, and I don't see how any court can say that I can't—no. one can use this.

THE COURT: Well, I've done my best to be clear with you, and it may take some legal study for you to have a better understanding, but let me repeat again you don't lose the opportunity to raise these issues, it's just a question of where in your case you get to raise them, and the place you get to raise them is before a judge. You've already made the issues clear so far in this case, and the jurisdictional arguments and the legal arguments haven't been accepted.

(Emphases added.)

### III. Trial

In its case-in-chief at trial, the prosecution introduced evidence supporting the facts previously recited in the "Statement of Background Facts" section of this opinion. After the prosecution rested, the circuit court held a hearing on Souza's request to introduce Exhibits I, K, L, M, N, and O. Souza explained that these exhibits showed why he believed he had no income tax liability:

[I]n my documentation, I make reference in my presentation, I make reference to this public notice quite often, and this public notice basically is the very essence of my belief that I have no personal income tax liability to the State of Hawaii or the federal United States, and it's—the documentation basically that's in my—in that public notice, as I mentioned previously, has references of court cases that give findings on particular court—issues of income tax. Now, I know I'm not able to traverse in the area of Hawaiian sovereignty issues, and it is not my intention to do so, but I would like to—I'd like to have the—my right insofar as submitting the information on the area of taxes that have given me this mind-set and belief of the system that I have, sir.

Exhibit O purports to be materials Souza mailed in 1996 to various government agencies, including the State Department of Taxation, in which Souza claims he is exempt from paying taxes based on various legal theories set forth in the materials. Exhibit O contains the "public notice" that Souza stated he mailed to the government agencies. Exhibit N includes a letter Souza submitted to First Insurance in May of 2000 demanding that no income taxes be withheld from his wages. The letter itself was admitted as a part of the prosecution's Exhibit 9A, but Souza argued that attachments to the letter contained in Exhibit N had been omitted from the prosecution's exhibit. Exhibit L purports to be an April 23, 2001, letter Souza sent to the United States Internal Revenue Service (IRS), in which he asserts: "This is a return, for the year 2000" that "is filed in lieu of an [IRS] Form 1040 series." Exhibit L contains no financial information but cites reasons asserted by Souza for his belief that he is not liable for income taxes or subject to filing requirements. Exhibits I, K, and M purport to be letters Souza sent to the IRS in response to the IRS's attempt to collect taxes assessed against him for certain years dating back to 1994. The letters express Souza's opposition to the IRS's collection attempts and cite legal authorities to support Souza's claim that he does not owe the taxes.

The circuit court excluded Exhibit O as "irrelevant[,] because it pertains to legal analysis not before the jury," and based on Hawaii Rules of Evidence (HRE) Rule 403 (1993), because Exhibit O would be confusing to the jury. The court excluded Exhibits I, K, L, and M, and the attachments to Souza's letter in Exhibit N, on the ground that Souza's analysis of the tax laws was irrelevant to the case.

In the defense case, Souza presented two character witnesses and his own testimony. Although the circuit court had excluded exhibits proffered by Souza on the ground that Souza's analysis of the tax laws was irrelevant, it permitted Souza to testify about the legal analysis supporting his claimed tax beliefs. Souza's testimony about the legal theories on which he based his asserted belief that the wages he earned from First Insur-

ance were not subject to taxation is difficult to follow. It appears, however, that his main contentions were that: 1) his wages were not taxable because compensation for labor is exempt from taxation; 2) his wages were not taxable because he was not an employee within the meaning of the tax laws; and 3) he believed he had no tax liability because government agencies, including the State Department of Taxation, failed to respond to a "public notice" he sent them in 1996, which set forth his views on why he had no tax liability. A copy of the public notice and copies of receipts for certified mail addressed to government agencies were included in Souza's Exhibit O, which the court had ruled was inadmissible.

Souza testified that because his documentary evidence had been excluded, the jury had to rely on his testimony and that of his character witnesses:

Q. (By Mr. Souza) Mr. Souza, if you are not allowed to submit your public notice and any of your federal correspondence, what evidence do you have to submit?

A. I have only my word, the word of my witnesses, that's all I have.

On cross examination, Souza admitted that he signed the 1999 and 2000 Hawai'i tax returns; that in those years he received wages from First Insurance; that he reported on his 1999 and 2000 Hawai'i tax returns that the adjusted gross income from his federal returns was zero; that he knew by doing so, he would receive the money withheld from his wages as refunds; and that he received and negotiated the refund checks. Souza denied, however, that he had any taxable income in 1999 or 2000, and he denied that he knew he was not entitled to the refunds.

After Souza rested, the prosecution recalled Investigator Hironaka in rebuttal. Investigator Hironaka was asked how much Souza owed in taxes in 1999 and 2000. Investigator Hironaka indicated that Souza owed $3,134 in taxes for 1999 and $3,208 in taxes for 2000:

Q. Mr. Hironaka, with regard to your investigation of the defendant, John Philip Souza, how much did the defendant owe in taxes in 1999, if any?

A. Mr. Souza received a refund of $2,962. If he had included his wages, he would have owed an additional $172.

Q. And how did the state determine the amount of taxes owed?

A. Based upon the wages, based upon his filing status as married filing single— married filing separate, excuse me, the itemized deduction of his state taxes withheld, and one personal exemption.

Q. And the same with regard to the defendant's tax return for calendar year 2000, how much did the defendant owe in taxes in 2000?

A. Defendant received a refund of $3,418. If he had filed a correct return by including his wages, he would have received a refund of $210.

## DISCUSSION

### I.

Souza's defense at trial was that because he had a good-faith belief that the wages he earned were not subject to taxation, his report of no taxable income on his 1999 and 2000 Hawai'i returns was not willfully false and he did not obtain the tax refunds by deception. On appeal, Souza argues [10] that the circuit court erred in excluding Exhibits I, K, L, and M, portions of Exhibit N, and Exhibit O because they all contained evidence of the legal theories upon which Souza claimed his wages were not taxable. Souza further argues that the circuit court erred in excluding evidence relating to his claim that he was a citizen of the Kingdom of Hawai'i because it was relevant to his good-faith belief that he had no tax liability.

### A.

■ An individual's good-faith belief that he or she has no duty under the tax laws to

---

10. Although Souza proceeded pro se at trial and sentencing in the circuit court, he is represented by counsel on appeal.

pay taxes is not relevant to the individual's civil liability for taxes. Courts have rejected legal theories similar to those espoused by Souza in ruling that those theories do not justify the non-payment of taxes. *E.g., Sullivan v. United States*, 788 F.2d 813, 815 (1st Cir.1986) (stating that "[c]ourts uniformly have rejected as frivolous the arguments that money received in compensation for labor is not taxable income" and rejecting as "meritless" the taxpayer's claim that he received no taxable wages because he was not an "employee" within the meaning of the tax laws); *United States v. Connor*, 898 F.2d 942, 943 (3rd Cir.1990) (noting that "[e]very court which has ever considered the issue has unequivocally rejected the argument that wages are not income"); *United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir.1993) (rejecting as frivolous claims that wages are not income subject to federal taxation and that payment of the federal income tax is voluntary); *Wilcox v. Comm'r of Internal Revenue*, 848 F.2d 1007, 1008–09 (9th Cir.1988) (same); *Scholet v. Comm'r of Internal Revenue*, 89 T.C.M. (CCH) 1434, 2005 WL 1400056, at *6 (U.S.Tax Ct.2005) (rejecting as frivolous the taxpayer's claim that the failure of the IRS to respond to his letter asserting that the payment of taxes was voluntary estopped the IRS from imposing a penalty for the taxpayer's failure to file his return). Thus, an honest misunderstanding of the law is no defense to the government's attempt to collect taxes that are legally owed.

■ An individual's good-faith belief that he or she has no duty under the tax laws to pay taxes, however, provides a defense to a criminal tax prosecution by negating proof that the defendant acted willfully. *Cheek v. United States*, 498 U.S. 192, 202–04, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). This is true even if the defendant's claimed good-faith belief is objectively unreasonable. *Id.* at 203, 111 S.Ct. 604. We conclude that the circuit court erred in excluding certain documentary evidence regarding Souza's legal theories that was relevant to his good-faith-belief defense.

### B.

Souza was charged with two counts of willfully filing false Hawai'i tax returns, in violation of HRS § 231–36(a). To prove these charges, the prosecution was required to show that Souza *"wilfully ma[de] and subscribe[d] [a] return . . . which contains or is verified by a written declaration that it is true and correct as to every material matter, and which [Souza] [did] not believe to be true and correct as to every material matter."* HRS § 231–36(a) (emphasis added). HRS § 231–36(a) is very similar to 26 United States Code (U.S.C.) § 7206,[11] which sets forth the federal offense of filing a false federal tax return.

We construe Hawai'i criminal tax offenses in accordance with judicial interpretations of their federal counterparts, including the requirement that the defendant must have acted willfully in committing the tax offense. HRS § 231–40 (2001) provides:

> § 231–40 Interpretation. [HRS] Sections 231–34, 231–35, and *231–36* shall be construed in accordance with judicial interpretations given to similar provisions of Title 26 of the United States Code; consistent therewith, the term "wilfully" shall mean a voluntary, intentional violation of a known legal duty.

(Emphasis added.)

The United States Supreme Court interpreted the term "willfully" as used in federal criminal tax statutes in *Cheek*, 498 U.S. at 192, 111 S.Ct. 604. The defendant, John L. Cheek, was an airline pilot charged with willfully attempting to evade income taxes and willfully failing to file an income tax return. At trial, Cheek contended that his wages from a private employer did not constitute income under the tax laws and that he was not a person required to pay income

---

**11.** 26 U.S.C. Section 7206 provides in relevant part:

Any person who—

 (1) **Declaration under penalties of perjury.**—Willfully makes and subscribes any return, statement, or other document, which

contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; . . .

 . . . .

shall be guilty of a felony. . . .

taxes or file an income tax return in the years charged. *Id.* at 197 n. 5, 111 S.Ct. 604. He further contended that he believed the income tax laws were unconstitutional as applied to him. *Id.* at 196, 204, 111 S.Ct. 604.

The Supreme Court stated that willfulness in the context of federal criminal tax statutes means "the voluntary, intentional violation of a known legal duty." *Id.* at 201, 111 S.Ct. 604. In applying this definition, the Court held that a defendant's claim that because of a misunderstanding of the tax laws, he had a good-faith belief that he was not violating the tax laws, if believed by the jury, would negate willfulness. *Id.* at 202, 111 S.Ct. 604. This is true even if the claimed belief or misunderstanding was objectively unreasonable. *Id.* The Court reasoned that a defendant cannot intentionally violate a known legal duty if he is unaware that the law imposes a duty on him because he misunderstands or is ignorant of the law. *Id.*

The Court, however, distinguished a defendant's claim that he misunderstood his legal duties under the tax laws from a claim that the tax laws are unconstitutional and thus need not be followed. *Id.* at 204–05, 111 S.Ct. 604. The Court concluded that claims that the tax laws are unconstitutional are submissions of a different order. *Id.* at 205, 111 S.Ct. 604. This is because such claims reveal the defendant's full knowledge of the tax laws at issue and the legal duties imposed, but a decision not to comply with the laws based on a belief that they are invalid. *Id.* at 205–06, 111 S.Ct. 604. The Court held that a defendant's views about the constitutionality or validity of the tax statutes do not serve to negate willfulness and need not be admitted at trial. *Id.*

The Court began its analysis with the general rule that ignorance of the law or mistake of law is no defense to a criminal prosecution. *Id.* at 199, 111 S.Ct. 604. It noted, however, that due largely to the complexity of the tax laws, Congress carved out an exception to this general rule by making specific intent to violate the law an element of certain federal criminal tax offenses. *Id.* at 200, 111 S.Ct. 604. Thus, the Court has construed the term "willfully" as used in federal criminal tax statutes as meaning a "voluntary, intentional violation of a known legal duty." *Id.* at 200–01, 111 S.Ct. 604.

The Court held that a jury must be permitted to consider evidence of a defendant's good-faith belief that his conduct did not violate the tax laws, even if that belief is objectively unreasonable, in determining whether the defendant acted willfully. *Id.* at 203–04, 111 S.Ct. 604. Accordingly, the Court concluded that the trial court had erred in instructing the jury to disregard evidence of Cheek's understanding of the meaning of the tax laws:

> We thus disagree with the Court of Appeals' requirement that a claimed good-faith belief must be objectively reasonable if it is to be considered as possibly negating the Government's evidence purporting to show a defendant's awareness of the legal duty at issue. Knowledge and belief are characteristically questions for the factfinder, in this case the jury. Characterizing a particular belief as not objectively reasonable transforms the inquiry into a legal one and would prevent the jury from considering it. It would of course be proper to exclude evidence having no relevance or probative value with respect to willfulness; but it is not contrary to common sense, let alone impossible, for a defendant to be ignorant of his duty based on an irrational belief that he has no duty, and forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision. It is common ground that this Court, where possible, interprets congressional enactments so as to avoid raising serious constitutional questions.
>
> It was therefore error to instruct the jury to disregard evidence of Cheek's understanding that, within the meaning of the tax laws, he was not a person required to file a return or to pay income taxes and that wages are not taxable income, as incredible as such misunderstandings of and beliefs about the law might be. Of course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing

more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge.

*Id.* (citations omitted).

The Court then addressed whether Cheek's claim that he believed in good faith that the income tax laws as applied to him were unconstitutional would serve to negate willfulness. The Court concluded that this claim was irrelevant to the issue of willfulness and did not provide a defense to Cheek's tax charges:

> Claims that some of the provisions of the tax code are unconstitutional are submissions of a different order. They do not arise from innocent mistakes caused by the complexity of the Internal Revenue Code. Rather, they reveal full knowledge of the provisions at issue and a studied conclusion, however wrong, that those provisions are invalid and unenforceable. Thus in this case, Cheek paid his taxes for years, but after attending various seminars and based on his own study, he concluded that the income tax laws could not constitutionally require him to pay a tax.
>
> . . . .
>
> We thus hold that in a case like this, a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury, and, if they are, an instruction to disregard them would be proper. For this purpose, it makes no difference whether the claims of invalidity are frivolous or have substance. It was therefore not error in this case for the District Judge to instruct the jury not to consider Cheek's claims that the tax laws were unconstitutional.

*Id.* at 205–06, 111 S.Ct. 604 (footnote omitted).

## C.

### 1.

Pursuant to HRS § 231–40, we adopt and apply the *Cheek* interpretation of the willfulness requirement in construing HRS § 231–36(a). Applying *Cheek* to Souza's case, we conclude that the circuit court erred in excluding Exhibit O. The circuit court excluded Exhibit O pursuant to HRE Rule 401 (1993)[12] and Rule 403 (1993)[13] on the grounds that Souza's analysis of the tax laws was irrelevant and that evidence of Souza's legal theories would confuse the jury. We apply the following standards of review in evaluating a trial court's rulings pursuant to HRE Rules 401 and 403:

> A trial court's determination of whether evidence is relevant under Hawaii Rules of Evidence (HRE) Rule 401 (1993) is reviewed under the right/wrong standard. *State v. St. Clair*, 101 Hawai'i 280, 286, 67 P.3d 779, 785 (2003). An evidentiary decision based on HRE Rule 403 (1993) is reviewed for abuse of discretion. *Id.* "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Lee*, 90 Hawai'i 130, 134, 976 P.2d 444, 448 (1999).

*State v. Sale*, 110 Hawai'i 386, 392, 133 P.3d 815, 821 (App.2006) (footnotes omitted).

Souza's defense was that he did not willfully file false tax returns because he had a good-faith belief that his wages were not taxable. Exhibit O included a "public notice" that Souza apparently sent in 1996 to the State Department of Taxation and other agencies before he filed the 1999 and 2000 Hawai'i tax returns at issue in this case. Souza claimed that the public notice contained the legal analysis on which he formed his belief that his wages were not taxable. In addition, Souza asserted that the failure of the State Department of Taxation and the

---

12. Hawaii Rules of Evidence (HRE) Rule 401 (1993) provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

13. HRE Rule 403 (1993) provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

other agencies to respond to and refute his theories supported his belief that his views were correct.

As established by *Cheek*, evidence that Souza, based on his understanding of the tax laws, had a good-faith belief that he was not required to pay taxes was relevant to whether Souza acted willfully. This is true even if Souza's interpretation of the tax laws was plainly wrong and objectively unreasonable. Accordingly, the circuit court erred in excluding Exhibit O on the ground that Souza's analysis regarding the tax laws was irrelevant and not a matter for the jury to consider.

We further conclude that the circuit court erred in excluding Exhibit O on HRE Rule 403 grounds. Exhibit O went to the heart of Souza's good-faith defense, and the jury should have been permitted to consider the exhibit in deciding the crucial question of willfulness. The circuit court abused its discretion in determining that the probative value of Exhibit O was substantially outweighed by the danger of jury confusion.[14]

Although the circuit court ruled that Souza's analysis of the tax laws was irrelevant and excluded documentary evidence relating to his analysis, it did permit Sozua to testify at trial about his understanding of the tax laws and why he believed his wages were not taxable. This, however, did not render the circuit court's error in excluding Exhibit O harmless beyond a reasonable doubt. At minimum, Exhibit O could have served to corroborate and lend credibility to Souza's testimony about his good-faith belief. It provided evidence that years prior to filing his 1999 and 2000 tax returns, Souza had prepared and submitted a document to the State Department of Taxation and other agencies that set forth the legal theories on which he claimed his good-faith belief was based. We

conclude that the circuit court's error in precluding Souza from introducing Exhibit O—documentary evidence that was central to his defense—was not harmless beyond a reasonable doubt.

2.

We also conclude that the court harmfully erred in excluding Exhibit O with respect to Souza's theft-by-deception charges. The offense of theft-by-deception requires proof that the defendant "obtain[ed] ... the property of another by deception with intent to deprive the other of the property." HRS § 708–830(2). In addition, HRS § 708–834(1) (1993), which sets forth specific defenses to theft prosecutions, provides in relevant part:

(1) It is a defense to a prosecution for theft that the defendant:

(a) Was unaware that the property ... was that of another; or

(b) Believed that the defendant was entitled to the property ... under a claim of right or that the defendant was authorized, by the owner or by law, to obtain or exert control as the defendant did.

Evidence that Souza, based on his understanding of the tax laws, had a good-faith belief that he did not owe taxes on his wages was relevant to whether Souza acted by deception and whether he had a defense under HRS § 708–834(1).[15]

3.

We do not resolve whether the circuit court erred in excluding the other exhibits that Souza argues on appeal should have been admitted. We conclude that the best approach is to permit the circuit court to reconsider the admissibility of these exhibits

---

14. We note that Exhibit O is over fifty pages long. Our decision that the circuit court erred in excluding Exhibit O does not preclude the circuit court on remand from considering whether it is appropriate to redact certain portions of Exhibit O.

15. To establish second-degree theft, the prosecution is required to prove both that the value of the property obtained by theft exceeded $300 and that the defendant believed the value of the prop-

erty exceeded $300. We note that the circuit court's jury instruction as to the value element of the second-degree theft charge provided that the prosecution was required to prove "[t]hat the Defendant, John Philip Souza, believed the value of the property exceeded $300." On remand, the court should instruct the jury that the prosecution is required to prove that the value of the property exceeded $300 and that the defendant believed the value of the property exceeded $300.

on remand in light of this opinion. With respect to Exhibit N, the record on appeal does not contain the portion of the exhibit that Souza contends was erroneously excluded. Thus, we are unable to determine whether the court erred in excluding the severed part of that exhibit. With respect to Exhibits I, K, L, and M, we note that unlike Exhibit O, these exhibits involve letters Souza ostensibly sent to the IRS *after* he filed the 1999 and 2000 Hawai'i tax returns. Thus, these exhibits may not be as probative of Souza's state of mind at the time he filed the returns as Exhibit O. Some of the letters also appear to contain information that is cumulative of information in other letters as well as in Exhibit O.[16]

We also do not resolve Souza's contention that the circuit court erred in excluding evidence relating to Souza's claim that he was a citizen of the Kingdom of Hawai'i. After the court ruled that such evidence was inadmissible, Souza did not make a proffer of the evidence he sought to introduce or how that evidence was relevant to his asserted good-faith belief that the tax laws did not require him to pay taxes on his wages. Consistent with *Cheek*, evidence regarding Souza's claim that he was a citizen of the Kingdom of Hawai'i would be relevant if it tends to show that based on his understanding of the tax laws, he had a good-faith belief that he was not required to pay taxes. *Cheek*, 498 U.S. at 203–04, 111 S.Ct. 604. Such evidence would not be relevant or admissible on the issue of willfulness, however, if it is offered to show that Souza believed the tax laws were unconstitutional, invalid, or unenforceable. *Id.* at 205–06, 111 S.Ct. 604. A defendant who knows what the law is, but disagrees with it, does not have a good-faith-misunderstanding-of-the-law defense. *Id.* at 203 n. 8, 111 S.Ct. 604.

## II.

Souza raises a variety of claims regarding the sufficiency of the evidence.

He contends that: 1) the prosecution failed to prove his allowable deductions and thus failed to prove that he had any taxable income; 2) the circuit court should have sua sponte dismissed the case at the close of the prosecution's case-in-chief for failure to present a prima facie case; and 3) there was insufficient evidence to support his convictions. Souza's contentions are without merit.

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution. *State v. Tamura*, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." *State v. Richie*, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting *State v. Quitog*, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)). Even if it could be said that the conviction is against the weight of the evidence, the conviction will nevertheless be affirmed as long as there is substantial evidence to support it. *Tamura*, 63 Haw. at 637, 633 P.2d at 1117.

" 'Substantial evidence' . . . is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Richie*, 88 Hawai'i at 33, 960 P.2d at 1241 (quoting *State v. Eastman*, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996)). Sufficient evidence to support a conviction can be established through the testimony of a single witness. *Eastman*, 81 Hawai'i at 141, 913 P.2d at 67. It is the province of the jury, not the appellate courts, to determine the credibility of witnesses and the weight of the evidence. *Tamura*, 63 Haw. at 637–38, 633 P.2d at 1117; *State v. Aki*, 102 Hawai'i 457, 460, 464, 77 P.3d 948, 951, 955 (App.), *cert. denied*, 102 Hawai'i 526, 78 P.3d 339 (2003).

16. We note that Exhibit L, which purports to be a letter Souza sent to the IRS as "a return for the year 2000" and "in lieu of an [IRS] Form 1040 series," may be relevant to whether Souza believed he was entitled to use a Hawai'i Form N–11 in filing his 2000 Hawai'i tax return. However, Souza did not assert this as a ground for the admission of Exhibit L in the circuit court or on appeal. We leave it to the circuit court to consider all arguments raised by the parties on remand in determining whether to admit Exhibit L, as well as Exhibits I, K, and M and the excluded part of Exhibit N.

*State v. Smith,* 106 Hawai'i 365, 372, 105 P.3d 242, 249 (App.2004).

 It is well established that when a defendant presents evidence after the denial of his or her motion for judgment of acquittal at the close of the government's case-in-chief, the defendant thereby waives any error in the trial court's denial of the motion. *State v. Mitsuda,* 86 Hawai'i 37, 38 n. 3, 947 P.2d 349, 350 n. 3 (1997); *State v. Kreps,* 4 Haw. App. 72, 75, 661 P.2d 711, 714 (1983). It therefore follows that when a defendant presents evidence after *failing to move* for judgment of acquittal, the defendant likewise waives any claim that the trial court erred in failing to sua sponte dismiss the case for insufficiency of evidence at the close of the government's case-in-chief. When the defendant presents evidence, the court on appeal determines the sufficiency of the evidence based on all the evidence presented. *Kreps,* 4 Haw.App. at 75, 661 P.2d at 714.

Souza chose to proceed pro se at trial. He elected to present evidence after the prosecution rested and thereby waived his right to challenge the sufficiency of the evidence in the government's case-in-chief. *See Mitsuda,* 86 Hawai'i at 38 n. 3, 947 P.2d at 350 n. 3; *Kreps,* 4 Haw.App. at 75, 661 P.2d at 714. Souza did not move for a judgment of acquittal at any point during the trial. Under these circumstances, we consider Souza's challenge to the sufficiency of the evidence based on the entire record, including evidence presented in rebuttal, *Kreps,* 4 Haw. App. at 75, 661 P.2d at 714, and under the plain error standard of review. *See State v. Chun,* 93 Hawai'i 389, 396 n. 4, 4 P.3d 523, 530 n. 4 (2000).

 Based on our review of the entire record, we conclude that there was sufficient evidence to support the jury's guilty verdicts. Souza asserts that there was insufficient evidence that he had any taxable income because the prosecution did not establish his allowable deductions. Souza thus contends that the prosecution failed to prove that his report of no taxable income was false or that his obtaining of a full refund of the taxes withheld involved a theft of more than $300. We disagree.

Inspector Hironaka testified that based on his investigation, he determined that Souza owed taxes on his 1999 and 2000 Hawai'i tax returns. Inspector Hironaka's testimony indicated that Souza owed $3,143 in taxes for 1999 and $3,208 in taxes for 2000. Inspector Hironaka explained that his calculation of the amount of taxes Souza owed was based on Souza's wages, the married-filing-separate filing status (which Souza had claimed on his returns), the itemized deduction of Souza's state taxes withheld, and one personal exemption. Souza did not object to Inspector Hironaka's testimony about the amount of taxes Souza owed, and accordingly, this testimony was properly considered by the trier of fact. *State v. Naeole,* 62 Haw. 563, 570, 617 P.2d 820, 826 (1980); *State v. Wallace,* 80 Hawai'i.382, 410, 910 P.2d 695, 723 (1996). Inspector Hironaka's testimony constituted sufficient evidence to show that Souza's claim of no taxable income was false and that the alleged theft of State of Hawai'i property exceeded $300 in value.[17]

 There was also sufficient evidence to show that Souza acted willfully and by deception in filing his Hawai'i tax returns and obtaining the refunds. Souza was told by his employer that he could not claim that his wages were exempt from Hawai'i income tax withholding. In addition, the evidence, when viewed in the light most favorable to the prosecution, showed that Souza deliberately used Form N–11 rather than Form N–12 in order to conceal that he was not reporting his wages as income and thus to conceal that he was underreporting his true taxable income. If Souza had used Form N–12, he would have been required to specifically report his wages and to demonstrate on his

17. In view of our analysis, we need not decide Souza's claim that the prosecution was required to prove his allowable deductions. We simply note that in tax evasion prosecutions, other courts have held that once the government has shown that the defendant has unreported income and has allowed the deductions claimed by the defendant and those it can calculate without the defendant's assistance, the government is not then required to prove that the defendant has no other allowable deductions. *United States v. Hiett,* 581 F.2d 1199, 1202 (5th Cir.1978); *United States v. Bender,* 218 F.2d 869, 871–72 (7th Cir.1955).

return why no taxes were owed on those wages. By using Form N–11, which did not require the reporting of wages, Souza could hide his failure to report his wages as income and make it appear as though his wage income had been reduced by allowable deductions so that his adjusted gross income and his taxable income were zero. The jury could reasonably infer from the evidence that Souza knew that his use of Form N–11 was improper and that he had chosen to use Form N–11 to conceal his underreporting of taxable income. Evidence that Souza said he planned to file amended returns when contacted by Inspector Hirokawa also supports the inference that Souza knew that the information on his returns was false.

## CONCLUSION

We vacate the Judgment of Conviction and Probation entered by the circuit court on December 29, 2004, and we remand the case for retrial on all counts and for further proceedings consistent with this opinion.

