

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00094-CR

_____


BILLY R. HIGGINBOTHAM, JR., Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 115th Judicial District Court
Marion County, Texas
Trial Court No. F14065



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Dissenting Opinion by Justice Carter

OPINION

In a case arising out of the construction of a log home by Billy R. Higginbotham, Jr., for Joe Huff and his wife, Higginbotham was convicted by a jury of theft of over $1,500.00 but less than $20,000.00 and is now appealing that conviction. *See* TEX. PENAL CODE ANN. § 31.03 (West Supp. 2011). Under Higginbotham's contract, he was to construct the log home on the Huffs' property for $228,919.00. Under the payment arrangements utilized by the parties, Higginbotham would submit to the Huffs what the parties refer to as a "draw," this consisting of an invoice or bill for specific items to be purchased and installed. Under this system, although Higginbotham made eight draws totaling $211,450.20, he did not substantially complete construction on the log home. Joe Huff testified that although he had planned to finance the construction out of monies he had set aside for that purpose, he found it necessary to borrow an additional $100,000.00 to complete the house and had performed work himself (which he said should have been performed by Higginbotham with the funds provided). Although the State charged Higginbotham with theft greater than $20,000.00 but less than $100,000.00, the jury found Higginbotham guilty of the lesser-included offense of theft over $1,500.00 but less than $20,000.00.

Higginbotham raises two issues on appeal. First, Higginbotham argues that the evidence against him is insufficient to support his conviction. Second, Higginbotham argues that the trial

2

court erred in admitting evidence concerning an extraneous offense because the State failed to prove the extraneous offense beyond a reasonable doubt.

**Sufficiency of the Evidence**

Higginbotham's first point of error challenges the sufficiency of the evidence. Higginbotham argues that the testimony in this case concerned only the quality and expense of the construction as opposed to proof of theft. Higginbotham claims:

> The complainant was cherry picking items out of an entire job which was near completion after he removed Appellant from the job to file criminal charges against him, apparently to help collect a civil judgment he had previously taken against him. What Huff did could be done with any construction contract to build a house, and should not be held to constitute theft.
>  In summary, viewing the evidence from the viewpoint most favorable to the State, Appellant was guilty, at most, of poor business or construction practices.

The State responds that although Higginbotham's work was shown to be "shoddy," the case as presented is not a dispute over the quality of Higginbotham's work but, instead, concerns "misrepresentation and unlawful appropriation." The State also argues that this case is distinguishable from this Court's recent opinion in *Ehrhardt v. State*, 334 S.W.3d 849, 857 (Tex. App.—Texarkana 2011, pet. ref'd) (finding evidence contractor committed theft insufficient).

Under the general theft statute through which Higginbotham was charged, in order to establish that Higginbotham committed theft, the State had the burden to establish that (1) Higginbotham, (2) with intent to deprive the owner (Huff) of property, (3) unlawfully

3

appropriated property, (4) without the effective consent of the owner.[1]  TEX. PENAL CODE ANN. § 31.03; *Baker v. State*, 986 S.W.2d 271, 274 (Tex. App.—Texarkana 1998, pet. ref'd). "Appropriate means *any* 'exercise of control over' the personalty in question . . . ." *McClain v. State*, 687 S.W.2d 350, 353 n.7 (Tex. Crim. App. 1985). The Texas Penal Code provides that consent is ineffective if "induced by deception. . . ." TEX. PENAL CODE ANN. § 31.01(3)(A) (West Supp. 2011). "Induce" means "to bring about, produce, or cause." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 975 (2d ed. 2001).

When the charged conduct concerns a matter for which the alleged victim and the accused had a contractual relationship, certain concerns arise. "[A] claim of theft made in connection with a contract requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property." *Baker*, 986 S.W.2d at 274. Neither the mere failure to perform a contract[2] nor the mere failure "to return or pay back money after failing to perform a contract, for the performance of which the money was paid in advance,"[3] are sufficient to establish guilt of

---

[1]We note the theft statute provides alternative means and methods of committing theft. *See* TEX. PENAL CODE ANN. § 31.03. We further note that the State did not allege any particular method of committing theft. *Cf. Geick v. State*, 321 S.W.3d 706 (Tex. Crim. App. 2011) (in theft case, State is bound by alleged statutory definition). Because the State did not allege any particular statutory manner of commission, the hypothetically-correct jury charge would include all the alternative methods of commission contained in the theft statute, including theft by deception. *See Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001); *Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[2]*Phillips v. State*, 640 S.W.2d 293, 294 (Tex. Crim. App. [Panel Op.] 1982).

[3]*Phares v. State*, 301 S.W.3d 348, 352 (Tex. App.—Beaumont 2009, pet. ref'd) (quoting *Cox v. State*, 658 S.W.2d 668, 671 (Tex. App.—Dallas 1983, pet. ref'd)).

4

theft. When alleging theft in connection with a contract, the State "must prove the defendant did not perform the contract and knew he was not entitled to the money, not merely that there is a dispute about the amount rightfully owed." *Jacobs v. State*, 230 S.W.3d 225, 229 (Tex. App.—Houston [14th Dist.] 2006, no pet.). As this Court explained in *Baker*, "under the terms of [a contract] individuals typically have the right to 'deprive the owner of property,' albeit in return for consideration." *Baker*, 986 S.W.2d at 274.

The Texas Court of Criminal Appeals has noted that "what separates lawful acquisitive conduct from theft is knowledge of a crucial 'circumstance surrounding the conduct'—that the acquisition is 'without the owner's consent.'" *McClain*, 687 S.W.2d at 354 (footnote omitted). Thus, the focus of our inquiry focuses not on whether Higginbotham deprived Huff of property, but whether the deprivation was unlawfully made (i.e., without Huff's effective consent). *See Ehrhardt*, 334 S.W.3d at 853–54. Although there was no evidence presented that Higginbotham possessed the requisite criminal intent at the time the contract was formed,[4] this Court has held that the requisite intent can be formed after the formation of a contract. *Id.* at 856. "A claim based upon malfeasance in connection with a contract requires proof of the false pretext or fraud in order to become a viable criminal prosecution." *Baker*, 986 S.W.2d at 274. We emphasize, however, the deprivation of property cannot occur prior to the formation of the requisite intent.

---

[4]One method of establishing theft, in connection with a contractual dispute, is to establish the "appellant had no intention of fulfilling his obligation under the agreement, and his promise to perform was 'merely a ruse to accomplish theft by deception.'" *Jacobs*, 230 S.W.3d at 229 (quoting *King v. State*, 17 S.W.3d 7, 15 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)). The State concedes the amount of work performed in this case negates any intent to deprive at the time of formation of the contract.

*Cortez v. State*, 582 S.W.2d 119, 120–21 (Tex. Crim. App. [Panel Op.] 1979); *Ehrhardt*, 334 S.W.3d at 856.

The State presented sufficient evidence that Higginbotham committed theft in connection with accepting a payment for cabinets that were never paid for.[5]  State's exhibit 2 includes a "draw," which states as follows in pertinent part:

> **BILLS PAID** (Reimbursement to Contractor):  the following is a list of bills or expenses for work performed on this project that have been paid and for which the contractor is requesting payment.
>
> Name of Subcontractor/Supplier     Description of Bill or Expense Paid       Amount Paid
>
> . . . .
>
> White Oak Cabinets              50% Cabinets                       9280.00
>
> . . . .

Although the draw includes a section titled "Bills to be Paid" which includes expenses "that will be paid from the funds requested," we note the cabinet payment request was included in the section requesting reimbursement for bills already paid.   Higginbotham conceded in his testimony that he never paid the fifty percent down payment on the cabinets contained within this request for payment.

---

[5]We note the State presented evidence of additional allegations.  Huff complained about missing concrete stamps, a number of plumbing issues, electrical work, the installation of the shingles, the size of the fireplace, the staining of the logs, gaps between door jambs and drywall, and the failure to install a felt barrier underneath the log siding on the gable, some of which would speak to the low quality of the work performed, but not address criminal activity. Because we find the evidence concerning the cabinets sufficient to support the jury's verdict, it is not necessary for us to decide whether the additional allegations constituted evidence of theft.

6

Huff testified that he received a call from White Oak Cabinets several weeks after the above "draw." Huff had just finished talking to Higginbotham, who had informed Huff that he was leaving town on vacation, but the cabinets would be installed the following Monday. The owner of White Oak Cabinets informed Huff that he had not begun work on the cabinets because the initial fifty percent down payment had not been made. Huff testified that he then called Higginbotham, who "stuttered around and said, well, I got somebody else to build the cabinets." According to Huff, Higginbotham claimed that White Oak Cabinets "couldn't do them fast enough," so he had hired TLC Cabinets to do the job instead. Huff called back to the owner of White Oak Cabinets, who inquired where TLC Cabinets would have gotten the "design and measurements" for construction of the custom cabinets. Huff contacted Higginbotham's representative or partner, Dennis Crosby, who informed Huff that he "had the measurements on the walls and stuff and so [he] just went ahead and had them built." Crosby reassured Huff that the cabinets would be ready for installation the following Monday. Huff testified he "knew that was a bunch of bull, you know, because we custom designed our cabinets." Huff then telephoned TLC Cabinets, whose representative informed Huff that they were not building any cabinets for Higginbotham and were "not delivering any cabinets Monday." When no cabinets were delivered the following Monday, Huff's wife "went down [to White Oak Cabinets] and wrote a check for $8,000 which was half the price of the cabinets that were due."

Higginbotham testified that the $9,280.00 designated in the draw for the cabinet down payment had been applied to other expenses.   Higginbotham claimed that he had advised Huff to request another bid from Umberto Medinas Custom Cabinets,[6] and Huff had told him he would "talk to [his] wife and we'll talk about going down and visiting him."   While he was waiting for Huff to decide, Higginbotham testified that Huff told him he had already made the down payment to White Oak Cabinets.   Higginbotham testified that at that point, he and Huff agreed to apply the $9,280.00 shown in the draw request for the cabinets to other expenses and that Huff voiced no objection to this modification.   Higginbotham presented a list of expenses totaling $8,394.89.[7] Higginbotham also introduced receipts supporting the expenses in the list.

A rational juror could have believed Huff's testimony over Higginbotham's testimony. Huff denied having agreed to apply the cabinet down payment to other expenses.   The credibility of witnesses is the sole province of the jury; we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"   *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19); *see Ehrhardt*, 334 S.W.3d at 857.

---

[6]Higginbotham testified, "Now yesterday Mr. Huff said that he contacted TLC Cabinets. . . . TLC Cabinets is not who I told Mr. Huff to speak with."

[7]We note the list of expenses is not signed by Huff, and Higginbotham's signature is not dated.   All of the other "draws" admitted into evidence are signed by Huff.   Although Huff did not provide a date with his signature on three of the other eight draws, Higginbotham provided a date with his signature on all of the other "draws."

The issue in this case is whether Higginbotham exercised control over Huff's property without Huff's effective consent. Our inquiry is not whether all of Huff's payments were applied to the project,[8] but rather whether Huff's consent to the deprivation of property was effective. A rational juror could have found that Higginbotham made false representations with the requisite criminal intent[9] and that Huff relied upon those false accusations,[10] concluding that Huff's consent to the deprivation was not effective. As noted above, consent induced by deception is ineffective. *See* TEX. PENAL CODE ANN. § 31.01(3)(A). A rational juror could have therefore found, beyond a reasonable doubt, that Higginbotham unlawfully deprived Huff of more than $1,500.00. The evidence is sufficient to support the jury's verdict on the lesser-included offense of theft in an amount greater than $1,500.00 but less than $20,000.00.

---

[8]We note Higginbotham denied any money was drawn and not used on the project. Higginbotham testified he believed Huff owed him additional money.

[9]A rational juror could have concluded, beyond a reasonable doubt, that Higginbotham had the requisite criminal intent. The jury usually must infer intent from circumstantial evidence, rather than direct proof. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The jury can draw reasonable inferences so long as each inference is supported by evidence presented at trial. *Hooper*, 214 S.W.3d at 15–16. As argued by the State, a rational juror could have inferred Higginbotham made misrepresentations when obtaining the "draw" and then lied about it to prevent discovery of his misdeeds.

[10] We agree with the State that our opinion in *Ehrhardt* is distinguishable from this case. *See Ehrhardt*, 334 S.W.3d at 857. In *Ehrhardt*, the victim denied relying on the contractor's false statements. *Id*. As such, the payment made after the false representations did not constitute unlawful deprivation under the facts of that case. *Id*. In this case, there is sufficient evidence for the jury to conclude Huff relied upon Higginbotham's false representations in consenting to the payment. As such, Huff's consent was not effective consent. *See* TEX. PENAL CODE ANN. § 31.01(3)(A).

**Error in Admission of Extraneous Offense Evidence**

In his second point of error, Higginbotham argues that the trial court erred in admitting testimony concerning an extraneous offense, which the State failed to prove beyond a reasonable doubt. The State responds that neither TEX. PENAL CODE ANN. § 31.03(c)(1) nor TEX. R. EVID. 404(b) requires such extraneous offenses to be proven beyond a reasonable doubt. The State further responds that TEX. CODE CRIM. PROC. ANN. art. 37.07 (West Supp. 2011) (which requires evidence of unadjudicated offenses at punishment stage be proven beyond a reasonable doubt) does not apply to the guilt/innocence phase of the trial. The State claims it was not obligated to prove the extraneous offenses beyond a reasonable doubt.

At trial, the State proffered two witnesses to testify concerning extraneous offenses during the guilt/innocence phase. After the testimony of the first witness, Brian Anthony Bailey, the defense objected. The trial court sustained the objection, struck Bailey's testimony, and instructed the jury to disregard Bailey's testimony. Higginbotham also objected to the testimony of the State's next witness, Randall Allen York. The State conducted a brief examination of York outside the presence of the jury, and the trial court overruled Higginbotham's objection to York's testimony. After direct examination and cross-examination of York, Higginbotham renewed his objection and argued that the State failed to meet its burden to prove the extraneous offense beyond a reasonable doubt. The trial court overruled the renewed objection.

10

Reviewing York's testimony, we find that he testified that he and Higginbotham had a contract for construction work. As a part of that contract, Higginbotham drew $7,500.00, representing to York that the money would be used to construct a retaining wall.[11] On cross-examination, York admitted he could not recall if the draw was included with other items on a written list and admitted further that he had agreed that the money could be applied to the expenses for construction of a driveway. York nevertheless insisted that the money was not applied to the construction of the driveway. When asked, "Do you know that he did not use that $7500 in the $476,000 that the house cost," York responded, "Yes, for a fact I know that." However, York testified the driveway was done in different sections and at different times. Although York testified that he "paid for all of the driveway minus what was drawn for the driveway," York could not remember whether Higginbotham made more than one draw for construction of the driveway. Although he testified he had "put together a detailed schedule," York had not brought the detailed list of payments with him to court. York also testified he had started a website about Higginbotham, which was "very uncomplimentary" and had obtained a default judgment against Higginbotham.

Although neither TEX. PENAL CODE ANN. § 31.03(c)(1) nor TEX. R. EVID. 404(b) explicitly provide that extraneous evidence at the guilt/innocence phase must be proven beyond a reasonable

---

[11]York also testified to theft of an additional $14,000.00, but the State has limited its argument on appeal to the above-mentioned $7,500.00. York testified Higginbotham "stole" an additional $14,000.00, which "was just an emergency fund that was never supposed to be drawn." York testified he and Higginbotham had entered into an agreement settling this overdraw. According to York, this agreement included additional payments Higginbotham represented he would make "out of his own pocket," but Higginbotham never made these payments.

11

doubt, it is well-established that such a requirement is implied. *See, e.g.*, *George v. State*, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994) (extraneous offenses introduced at guilt/innocence must be proven beyond a reasonable doubt).

In *Harrell v. State*, the Texas Court of Criminal Appeals held the standard of admissibility for extraneous offense evidence to be proof beyond a reasonable doubt. 884 S.W.2d 154, 161 (Tex. Crim. App. 1994); *Toliver v. State*, 279 S.W.3d 391, 395 n.3 (Tex. App.—Texarkana 2009, pet. ref'd). The Texas Court of Criminal Appeals has recently reaffirmed *Harrell*, but clarified that the State is not limited to evidence presented at the initial determination. *Fischer v. State*, 268 S.W.3d 552, 553 (Tex. Crim. App. 2008) (although State's pretrial proffer of evidence was insufficient, appellate review must consider evidence presented at trial). Thus, even if the trial court does not conditionally admit the evidence subject to "connecting up," our appellate review considers all the evidence in the record. *Id.*

The State failed to establish the extraneous offenses beyond a reasonable doubt. York testified that he had agreed the money, which had originally been designated to be used for a retaining wall, could be applied to the driveway. Although York denied that it had been spent for the driveway, York was unable to affirm how much was drawn for the driveway or how much he had personally spent on the driveway. In essence, the jury was asked to rely on York's conclusory statement that the money had not been applied to the driveway. Although York's insistence that the money had not been applied to the driveway is some evidence, his conclusory

12

statement to that effect is not sufficient for a rational juror to conclude the theft occurred beyond a reasonable doubt. The State has failed to establish beyond a reasonable doubt either that the $7,500.00 was not applied to the driveway or that York's consent was ineffective. We agree with Higginbotham that the extraneous offense of theft of $7,500.00 was not proven beyond a reasonable doubt. The trial court erred in admitting York's testimony.

**The Error in Admitting the Extraneous Offense Was Harmless**

Error in admitting evidence concerning extraneous offenses is reviewed under the standard for nonconstitutional error contained in TEX. R. APP. 44.2(b). *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007) (finding under Rule 44.2(b) error in admitting photographs was harmless). Rule 44.2(b) provides that an appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Reversible error has not occurred if the appellate court, after examining the record as a whole, "has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

The Texas Court of Criminal Appeals has instructed:

In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any

13

testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court might also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material to appellant's claim.

*Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *see Motilla*, 78 S.W.3d at 355–57 (overwhelming evidence of guilt can be a factor).

We first note the character of the erroneously admitted evidence weighs in favor of a finding of harm. "Extraneous-offense evidence is 'inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges not part of the present case against him.'" *Sims v. State*, 273 S.W.3d 291, 294–95 (Tex. Crim. App. 2008) (quoting *Pollard v. State*, 255 S.W.3d 184, 185 (Tex. App.—San Antonio 2008), *aff'd*, 277 S.W.3d 25 (Tex. Crim. App. 2009)). "By its very nature, an improperly admitted extraneous offense tends to be harmful. It encourages a jury to base its decisions on character conformity, rather than evidence that the defendant committed the offense with which he or she has been charged." *Jackson v. State*, 320 S.W.3d 873, 889 (Tex. App.—Texarkana 2010, pet. ref'd). This factor favors a finding of harm.

The remaining factors, however, overwhelmingly favor a finding the error did not result in harm. In considering how the erroneously admitted evidence might be considered in connection with other evidence in the case, the emphasis of the evidence by the State should be considered. *Id.* at 890. The State's emphasis of the extraneous offense was rather minimal. When considered in connection with the other evidence, York's testimony is of minor importance. The

14

testimony of York consisted of approximately twenty-one pages out of approximately 300 pages of testimony presented during guilt/innocence. York's testimony was confusing, contradictory, and conclusory. Finally, the trial court correctly instructed the jury that the extraneous offense must be proven beyond a reasonable doubt, instructing it as follows:

> You are instructed that certain evidence was admitted in evidence before you in regard to the defendant having committed offenses other than the one for which he is now on trial. Such evidence cannot be considered by you against the defendant as evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does, for the purpose of showing the defendant's motive, opportunity, intent, preparation, plan or knowledge, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any, were committed.

"Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial" and appellate courts "generally presume that a jury will follow the judge's instructions." *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). The trial court's instruction serves to mitigate any harm which might have resulted from the error in admitting York's testimony. The jury was instructed the extraneous offense must have been established beyond a reasonable doubt, and we will presume the jury followed that instruction. After reviewing the entire record, we have a fair assurance that the error did not influence the jury or had merely a slight effect. We conclude the error did not result in any harm to Higginbotham's substantial rights.

15

**Conclusion**

The State did present sufficient evidence to support a conviction of the lesser-included offense, the offense of which the jury found Higginbotham guilty. A rational juror could have concluded that Higginbotham had deprived Huff of $9,280.00 by falsely representing that the money in that draw would be used to make a down payment on cabinets to be built by White Oak Cabinets. The evidence is also sufficient for a rational juror to have concluded beyond a reasonable doubt from the circumstantial evidence presented at trial that Higginbotham possessed the requisite intent to deprive. Because the State failed to prove the extraneous offense beyond a reasonable doubt, the trial court erred in admitting York's testimony. We conclude, however, that although the admission of this evidence was in error, it did not result in substantial harm to Higginbotham.

For the reasons stated, we affirm the judgment of the trial court.


Bailey C. Moseley
Justice


DISSENTING OPINION

I agree that error was committed in allowing the introduction of evidence of an extraneous offense. The testimony of Higginbotham's previous unfulfilled contract with York did not

16

establish, beyond a reasonable doubt, that an offense was committed by Higginbotham.   This is a finding that the evidence is insufficient as a matter of law.   Therefore, no fact issue exists for jury consideration on that issue.

On the question of whether this error affects a substantial right of the defendant, the majority opinion recognizes that the nature of the erroneously admitted evidence favors a finding of harm.   ("By its very nature, an improperly admitted extraneous offense tends to be harmful.") But the majority opinion rejects that conclusion based on other factors which "overwhelmingly" favor a finding that the error did not result in harm.   I disagree.   The majority notes that the evidence only took twenty-one pages of 300, that York's testimony was confusing and contradictory, and that the trial court instructed the jury not to consider the extraneous offense evidence unless the jury found, beyond a reasonable doubt, that Higginbotham committed the offense.   None of these reasons are persuasive.

The quantity of the evidence on an extraneous offense was indeed meager, but the more important issue is the effect it had on a jury when it was considering a very similar offense.   The fact that York's testimony regarding the previous offense was confusing and contradictory suggests that it was legally insufficient to prove the extraneous offense; I fail to see how presenting this improper evidence reduces the chance that it was harmful.   Finally, the fact that the trial court instructed the jury to consider the extraneous evidence only if it found beyond a reasonable doubt that Higginbotham committed the offense does not alleviate the harm.   In essence, the majority

17

opinion authorizes the impossible: the jury is allowed to find, beyond a reasonable doubt, Higginbotham committed the extraneous offense based on evidence that is legally insufficient.

It cannot logically be true that the evidence was not harmful because: (1) it was contradictory and confusing and therefore innocuous, and also, (2) perhaps the jury found this legally insufficient evidence met the reasonable doubt standard. The majority opinion finds "fair assurance" the error did not influence the jury. For the reasons stated, I disagree.

I respectfully dissent.


Jack Carter
Justice


Date Submitted:     October 25, 2011
Date Decided:     December 14, 2011

Publish

18