Opinion filed July 12, 2012



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00197-CR

_____

## DEMOND CASTLE A/K/A DAMOND CASTLE, Appellant
## V.
## STATE OF TEXAS, Appellee

### On Appeal from the 85th District Court
### Brazos County, Texas
### Trial Court Cause No. 08-05436-CRF-85

## M E M O R A N D U M   O P I N I O N

The grand jury indicted Demond Castle a/k/a Damond Castle for the offense of aggravated kidnapping, enhanced with a prior felony conviction. Appellant pleaded not guilty and was tried before a jury that found him guilty and found the enhancement paragraph true. The jury assessed punishment at confinement for eighty years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000. We affirm.

Jamelda Jeanjacques lived in Bryan/College Station with her two children. She met Appellant and they started a tempestuous dating relationship. After the relationship had ended, she encountered Appellant at a government office, and he offered her a ride home. She accepted, and they ended up having lunch at a restaurant. A few days later, she was walking from her apartment to a nearby convenience store when Appellant drove in front of her path and asked her if she needed a ride. When she declined, Appellant exhibited a .380 pistol and forced her into his vehicle. Appellant drove her to Snook, Texas, and he stopped the vehicle on a dirt road. Appellant demanded to know with whom Jeanjacques was romantically involved. She gave him

a name that she had made up, and he dragged her out of the car. Appellant then attacked Jeanjacques by kicking her in the head and stomach. After he finished attacking her, he put her back in the car and drove her to another dirt road close to a local airport. Appellant ordered Jeanjacques to get out of the car and take off her clothes. She complied. Appellant then pushed Jeanjacques to the ground and sexually assaulted her.

Appellant contends in his sole issue that the trial court erred in admitting evidence of two previous uncharged kidnapping offenses that Appellant committed against Jeanjacques. At a hearing without the jury present, the State proffered two incidents in which Appellant held Jeanjacques at gunpoint in her apartment overnight. The State explained:

> I think the witness will talk about . . . two incidents where the defendant held her in her apartment overnight, would not allow her to leave because they had had a physical altercation and he said . . . if she left, she would go to the police so he wasn't going to let her leave until she calmed down and wouldn't go to the police.

The trial court asked about the similarity between the incident on trial and the extraneous offenses:

> [PROSECUTOR] The similarity is the restraint of her liberty although different -- different ways of restraining her liberty. But in both instances he assaulted her physically, not sexually -- physically hit her, threatened her, threatened to kill her. And in both instances a gun was used - - or exhibited. Not necessarily used in the sense that we are alleging it was used here.

The trial court overruled Appellant's objection to the evidence and admitted it.

At trial, Jeanjacques testified about both events in greater detail. In one incident, Jeanjacques and Appellant had an argument in her residence, and she was trying to leave. Appellant held her in her apartment with a gun and would not let her leave. She also testified that Appellant hit her on her face or her "stomach area." Appellant eventually let her leave her residence the following morning. In the other incident, Jeanjacques testified that she and Appellant were arguing about money and that he hit her in the face:

> I would try to fight back with him and he's a bigger guy than I am, so . . . it was no use to try to fight because . . . he would just overpower me. He would hit my head on the floor; . . . if I'm down on the floor, he would hit my head on the floor. . . . [I]f I would try to leave, he would jump on me again.

She waited until Appellant fell asleep and then she left her residence.

2

The general rule is that other crimes, wrongs, or acts are not admissible to show the character of that person and conformity with that character. TEX. R. EVID. 404(b). Rule 404(b) lists some exceptions for which extraneous events may be admissible against an accused, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* This list of exceptions contained in Rule 404(b) is not exclusive. *Turner v. State*, 754 S.W.2d 668 (Tex. Crim. App. 1988). The standard of review of a trial judge's admission of an extraneous offense under Rule 404(b) is abuse of discretion. *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).

The first task in determining whether an extraneous offense is admissible is to determine whether the extraneous offense is relevant to prove some material issue other than the defendant's character. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." TEX. R. EVID. 401; *Montgomery*, 810 S.W.2d at 386. If evidence of an extraneous offense has such relevancy, it is ordinarily admissible. *Montgomery*, 810 S.W.2d at 387. If the trial court decides the extraneous offense is relevant, then it must still decide, if asked, whether the probative value of the evidence is outweighed by the danger of unfair prejudice. *Id.* at 389; *see* TEX. R. EVID. 403.

The State argued that the evidence was relevant to show the previous relationship between Appellant and Jeanjacques and that the motive was Appellant's belief that she was "seeing other men." Under the indictment, the State had to prove that Appellant intentionally or knowingly abducted Jeanjacques by restricting her movements without her consent so as to interfere substantially with her liberty by moving her from one place to another or confining her with the intent to prevent her liberation by using or threatening to use a deadly weapon. As noted above, Rule 404(b) delineates a number of exceptions under which an extraneous offense may be admissible. We will analyze the extraneous offenses in this case using the exceptions listed under the rule because, while the list is not exclusive, it does outline the most common exceptions and because the State has not advanced any novel reason why this evidence is admissible. Some of the exceptions, such as opportunity, knowledge, identity, or absence of

3

mistake or accident clearly do not apply in this case. We will determine whether any of the remaining exceptions listed in Rule 404(b) support the admissibility of the evidence in this case.

Under the common plan or scheme exception, the trial court may properly admit evidence to show steps taken by a defendant in preparation for the charged offense. *Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005). The incidents in this case do not constitute a common plan or scheme because they do not indicate a series of steps Appellant took in preparation for the commission of the offense for which he was on trial. Instead, the evidence shows that Appellant committed similar crimes previously against the same victim.

Although motive is not an element of a crime, it is always relevant for the State to bring forth evidence showing a defendant's motive for the commission of an offense. *See Crane v. State*, 786 S.W.2d 338, 349–50 (Tex. Crim. App. 1990). In this case, Appellant was apparently motivated by jealousy in that he thought Appellant was romantically involved with another man. This was evidence that could be gleaned from the circumstances of the crime itself. When Jeanjacques testified about the previous incidents, she shed light on Appellant's motivations for the previous attacks: "He just always felt like I had someone else -- I was sleeping with someone else. And that's basically what the argument was about and the fact that maybe . . . he wanted . . . money from me." Evidence of the previous incidents did not show the motive for the crime for which Appellant was on trial; that was shown by other evidence. Evidence of the earlier incidents only served to show that Appellant had the same motive at a previous time.

An extraneous offense is admissible to prove the mental state required for the charged offense when intent cannot be inferred from the act itself or the defendant presents evidence to rebut that inference. *Armstrong v. State*, No. 03-02-00211-CR, 2003 WL 21189756 (Tex. App.—Austin May 22, 2003, no pet.) (mem. op., not designated for publication). In this case, the State had to prove Appellant had the specific intent to prevent Jeanjacques's liberation by using or threatening to use deadly force. *See Brimage v. State*, 918 S.W.2d 466, 475–76 (Tex. Crim. App. 1994). Given the facts delineated above, Appellant's intent was properly inferred from the crime itself. The extraneous offenses did not shed any light on Appellant's intent in the case for which he was on trial, except to reiterate that he had the requisite intent in the previous incidents.

4

Rebuttal of a defensive theory, while not on the Rule 404(b) list, is another possible exception that allows for the admission of an extraneous offense. *See Padilla v. State*, No. 13-07-00429-CR, 2008 Tex. App. LEXIS 6356, at *4–5 (Tex. App.—Corpus Christi Aug. 21, 2008, no pet.) (mem. op., not designated for publication). Appellant's defensive theory was that the State did not prove the elements of the offense charged and that Jeanjacques was lying. The previous crimes did not serve to increase Jeanjacques's credibility, since she was the only person who testified to the crimes. It was not evidence that served to rehabilitate her character for truthfulness. *See* TEX. R. EVID. 608(b). The extraneous offenses did not rebut any defensive theory advanced by Appellant at the trial.

Because the extraneous offense evidence was not relevant for any reason other than character conformity, the trial court abused its discretion in admitting the evidence. Because we conclude that the extraneous offense evidence was not admissible under Rule 404(b), we need not decide whether the probative value of the evidence was outweighed by the danger of unfair prejudice. We will now examine the question of harmless error in the admission of this evidence.

When a trial court erroneously admits evidence of extraneous offenses, we review the error under the nonconstitutional harmless error standard. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); s*ee* TEX. R. APP. P. 44.2(b). In such cases, we will reverse only if the error impacted Appellant's substantial rights. Rule 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The appellate court, after examining the entire record, must have a fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson*, 967 S.W.2d at 417.

In assessing whether the jury's decision was adversely affected by the error, we will consider everything in the record, including testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the error and how it might be considered in connection with the other evidence in the case. *Higginbotham v. State*, 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd). We can also consider the court's charge to the jury, the State's theory, any defensive theories, closing arguments, and voir dire, if material to Appellant's claim. *Id.*

5

In *Booker v. State*, 103 S.W.3d 521 (Tex. App.—Fort Worth 2003, pet. ref'd), the Fort Worth Court of Appeals considered several factors in determining whether the admission of an extraneous sexual assault committed by the defendant was harmless error. First, the court looked at the amount of time it took for the state to prove the extraneous offense. 103 S.W.3d at 538. In this case, the presentation of the extraneous offenses took a relatively short time; only nine pages of the forty-three pages of direct testimony of Jeanjacques concerned the extraneous offenses. There were also several other witnesses during the State's case-in-chief, and none of them concerned the extraneous offenses.

The *Booker* court also looked at the emphasis the State put on the extraneous offense in closing argument. *Id.* at 538–39. In this case, there was only one mention of the extraneous offenses in closing argument by the State.

Finally, the *Booker* court looked at the amount of evidence of the defendant's guilt of the primary offense. *Id.* at 539. The evidence of Appellant's guilt in this case was mostly dependent on the credibility of Jeanjacques, since no physical evidence was introduced tying Appellant to the crime. Of course, an appellate court cannot assess the strength of the evidence in such a case because it only has the record to evaluate. The jury, however, was convinced by Jeanjacques's testimony beyond a reasonable doubt that Appellant was guilty. Jeanjacques's credibility was neither enhanced nor degraded by her testimony about the extraneous offenses. Thus, the extraneous offense testimony likely had little effect on the jury's verdict.

We conclude that the error in the admission of the extraneous offense evidence did not have a substantial or injurious effect on the jury's verdict; thus, the error is harmless. Appellant's sole issue is overruled.

The judgment of the trial court is affirmed.

ERIC KALENAK

July 12, 2012

JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.