Opinion filed August 31,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-11-00259-CR 

                                                    __________

 

                               RYAN
ADAM MEIGHEN, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 29th District Court

 

                                                         Palo
Pinto County, Texas

 

                                                      Trial
Court Cause No. 14385 

 



 

                                            M
E M O R A N D U M   O P I N I O N

            Ryan
Adam Meighen pleaded guilty to the offense of forgery in a bench trial before
the court.  Tex. Penal Code Ann. §
32.21 (West 2011).  Appellant had attempted to use a forged $100 bill to pay
for shoes in a Mineral Wells store.  The trial court assessed a sentence of confinement
for five years in the Institutional Division of the Texas Department of
Criminal Justice and a fine of $3,000.  Appellant raises two points of error on
appeal: (1) the trial court abused its discretion when it took into
consideration during punishment an unadjudicated offense that had been
dismissed and (2) the trial court violated due process by failing to provide an
impartial forum for the assessment of punishment.  We affirm.

Background
Facts

            On
September 6, 2011, appellant’s case was called for trial.  Prior to jury
selection, appellant waived his right to a jury trial and entered his plea of guilty
to the offense of intentional possession with intent to pass a forged $100
bill.  See Section 32.21.  He was duly admonished, and the trial court
accepted his plea.  

            On
September 16, 2011, the trial court continued the trial.  The court took note
of the prior proceedings on September 6, reviewing the steps taken in the prior
proceeding to make certain that appellant’s guilty plea was voluntarily made. 
The State then presented its evidence: the guilty plea memorandum signed by
appellant, the arrest report of the officer at the Mineral Wells Police
Department, and the counterfeit $100 bills recovered at the time of appellant’s
arrest.  

            According
to the arrest report, appellant and William Bell Harris had attempted to pass a
forged $100 bill at Bealls department store in Mineral Wells.  Harris
identified himself to the police officer, but appellant gave a false name. 
Appellant confirmed his correct name when the officer found appellant’s
driver’s license in appellant’s wallet.  Appellant had four more counterfeit
$100 bills in his wallet.  Harris did not have any other forged bills.  The
bills appeared to have originally been $5 bills that had been altered; all the
counterfeit bills had the same serial number.  Because the officers found Dairy
Queen cups and a bag in their car, the officers contacted the Dairy Queen in
Mineral Wells and learned that two white males had given it a counterfeit $100
bill.

            After
the introduction of the exhibits, the State rested.  Appellant testified in his
own behalf.  He first acknowledged that he had filed a written application to
the court for community supervision and had asked the court to defer an
adjudication of guilt.  Since his arrest, appellant  had been working in the
oilfield.  At the time of the hearing, he worked for Patterson Energy as a
driller in New Mexico, working seven days on and seven days off.  Appellant had
married and had a little boy who was eighteen months old.  He explained how a
conviction would adversely affect his opportunities for advancement with the
company.  At the time of trial, he had an opportunity to be promoted to rig
manager.  He testified that the company had posted a surety in the amount of $2
million to protect the company if he made a mistake as a driller.  Appellant
concluded by stating that he would meet and comply with any terms of probation
ordered by the court.  

            The
State only asked four questions during cross-examination.  They concerned his
probation for an earlier misdemeanor DWI.   Appellant said that he did well on
probation, that he would benefit from probation in this case, and that he would
follow all the rules if given probation.

            The
trial court then began questioning appellant.  The court first asked appellant
how the counterfeit bills came into existence.  Appellant stated that he had
worked for a man in Sanger who owed him $1,400; the man had paid him with six
$100 counterfeit bills.  The trial court then asked the State if anything had
become of the “Dairy Queen incident,” apparently referring to the $100
counterfeit bill given to the Dairy Queen.  The State advised the court that it
did not believe anything had been filed and that appellant may have given the
Sanger man’s name to the detectives when he spoke with the detectives
concerning the Dairy Queen incident.

            The
trial court asked how many counterfeit bills appellant had received from the
man in Sanger, and appellant replied that he had received six.  The court then
stated that it was apparent from the arrest report that appellant knew that the
bills were counterfeit and asked if that was correct.  Appellant replied, “I
had a suspicion, Your Honor.”  The court’s reaction was, “[T]hey have the same
serial number on every bill.  Doesn’t take a genius to figure that out.”  The
court then asked how the man in Sanger paid for the rest of the work that
appellant did, and appellant said he had not received the balance.  

            The
trial court then admonished appellant about the seriousness of appellant’s
offense and stated that, if everyone went around passing fake United States
currency, it would not take long for the foundation of our economic system to
crumble.  The court then asked about Harris, and appellant told the court that
Harris was in confinement.  The State informed the court that Harris had pleaded
guilty and received a sentence of confinement for five years.  And appellant’s
attorney added that Harris also had a prior felony conviction.

            At
that point, the court asked appellant, “What became of your charge for
aggravated sexual assault of a child?”  Appellant replied that it was
dismissed.  The court asked why, and appellant stated, “It was bad
allegations.”  The court then asked, “How old was the alleged victim?” 
Appellant responded, “16.”  

            The
court pointed out that appellant’s earlier probation had to be amended twice. 
Appellant explained that, while he was on probation for the DWI conviction in
2006, he had lost his employment and had to have two extensions before he could
complete his probation.  The court stated that it was not certain if appellant
fully understood that forgery of United States currency was a serious offense. 
Appellant responded that he had made a mistake.  The court agreed and found appellant
guilty of the offense alleged in the indictment.   

            The
court then asked if the State had any additional evidence concerning
punishment, and the State stated that it did not.  Appellant also had no
additional evidence. 

Analysis

            Appellant’s
two points of error center on the trial court’s questions concerning
appellant’s arrest for aggravated sexual assault.  Prior to trial, the State’s
notice of intent to introduce evidence of other crimes, wrongs, or acts
(adjudicated or unadjudicated) during guilt/innocence and punishment phases included
only the 2008 conviction of appellant for driving while intoxicated.  The State
had not listed the aggravated sexual assault charge as an extraneous offense,
and there is nothing in the record providing a basis for the trial court’s
questions.  We assume that the charge had been dismissed, otherwise the State
would have listed it in the notice.  Although appellant states that the trial
court’s inquiry concerning appellant’s arrest occurred during the punishment
phase of the trial, the court’s inquiry occurred during the continuation of the
guilt/innocence phase.

            Appellant’s
points are that the trial court abused its discretion in considering the
unadjudicated offense of aggravated sexual assault of a child when assessing
appellant’s punishment and that the trial court violated due process when it deprived
appellant of an impartial forum on punishment.  Appellant points out that he had
no prior felony, yet he received the same punishment as Harris.  In addition,
appellant had married, had worked hard to be a productive citizen, and now had
a child to support.  The State responds that there is no evidence in the record
that the trial court considered appellant’s prior arrest when assessing
punishment.

            Although
the State is correct, the trial court erred when it went outside the evidence
in the record in its questioning of appellant.  Unadjudicated extraneous
offenses cannot be considered by the factfinder during the punishment phase unless
the State proves beyond a reasonable doubt that the acts or offenses are
attributable to the defendant  Tex. Code
Crim. Proc. Ann. art. 37.07, § (3)(a) (West Supp. 2012); see
Huizar v. State, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000).  The same is true
during the guilt/innocence phase.  Although neither Tex. Penal Code Ann. § 31.03(c)(1) (West Supp. 2012) nor Tex. R. Evid. 404(b) explicitly provides
that extraneous offense evidence at the guilt/innocence phase must be proven
beyond a reasonable doubt, it is well established that such a requirement is
implied.  George v. State, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994); Higginbotham
v. State, 356 S.W.3d 584, 591 (Tex. App.—Texarkana 2011, pet ref’d).  Error
in admitting evidence concerning extraneous offenses is reviewed under the standard
for nonconstitutional error contained in Tex.
R. App. P. 44.2(b).  Casey v. State, 215 S.W.3d 870, 885 (Tex.
Crim. App. 2007).  Rule 44.2(b) provides that an appellate court must disregard
a nonconstitutional error that does not affect a criminal defendant’s
substantial rights.  

            Under
Rule 44.2, an appellate court may not reverse for nonconstitutional error if
the court, after examining the record as a whole, has fair assurance that the
error did not have a substantial and injurious effect or influence in
determining a defendant’s conviction or punishment.  See Anderson v. State,
182 S.W.3d 914, 919 (Tex. Crim. App. 2006); Aguirre-Mata v. State,
125 S.W.3d 473, 474 (Tex. Crim. App. 2003).           

            Appellant’s
argument that the trial court took into consideration on punishment appellant’s
arrest and charge of sexual assault, which was dismissed, is only a speculative
assumption.  There is nothing in the record supporting that assumption.  The
trial judge in this case was experienced.  The standard of admissibility for
extraneous offense evidence — proof beyond a reasonable doubt — was well
established.  Appellant requested community supervision and deferred
adjudication.  It is clear from the record that the trial court considered the
positive steps appellant had made in his life since his arrest for this
offense, but was uncertain that appellant understood the seriousness of his
offense.

            In
appellant’s second point of error, he argues that Texas courts have found that
a defendant’s due process rights are violated when the full range of punishment
is not considered.  There is nothing in this record to demonstrate that the
trial court did not consider the full range of punishment.  The court
explicitly acknowledged to appellant that he was being asked to consider
community supervision and deferred adjudication.  The court’s punishment was
within the range of punishment for a third-degree felony offense: two to ten
years’ confinement and a fine not to exceed $10,000.  

            The
cases cited by appellant do not support his argument that he was denied due
process.  Jefferson v. State, 803 S.W.2d 470 (Tex. App.—Dallas 1991, pet.
ref’d), involved a defendant who had been placed on deferred adjudication.  The
State filed a motion to proceed with adjudication of guilt because of the
defendant’s failure to pay fees and to report.  The trial court, over
objection, questioned the defendant and reminded him that the court had warned
him earlier that he would be assessed the maximum punishment of twenty years if
he did not report and pay his probation fees. The court then found the defendant
guilty and sentenced him to twenty years’ confinement.  The court of appeals
reversed and remanded the cause, holding that the trial court had violated the
defendant’s due process rights by failing to consider the full range of
punishment for the offense charged when he imposed a predetermined punishment
period.  Id. at 472.

            Earley
v. State, 855 S.W.2d 260 (Tex. App.—Corpus Christi 1993, pet. dism’d), also
cited by appellant, involved a similar error by the same trial judge.  The
defendant had been placed on deferred adjudication on his burglary charges and
on shock probation for his theft conviction.  The State moved to revoke the
defendant’s probation in the theft case and moved to adjudicate his guilt in
the two burglary cases after the defendant committed a new offense.  When the
trial judge had placed the defendant on probation, the judge had warned the
defendant that if he violated his probation the defendant probably would be
given a punishment at the top level of the punishment range.  And, when the
defendant appeared for the revocation and adjudication hearing, the judge told
the defendant, “I’m just upset that you did a third-degree felony.  I would
rather have seen you with a first-degree, because I would like to give you
life.”  855 S.W.2d at 262.  The court then assessed the maximum years of
imprisonment for each offense and ordered the sentences to run consecutively.  

            Appellant’s
two points of error are overruled.

This
Court’s Ruling

            The
judgment of the trial court is affirmed.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

August 31, 2012

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J., 

McCall, J., and Kalenak, J.