**Opinion filed August 31, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00259-CR

_____

## RYAN ADAM MEIGHEN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. 14385**

## M E M O R A N D U M   O P I N I O N

Ryan Adam Meighen pleaded guilty to the offense of forgery in a bench trial before the court. TEX. PENAL CODE ANN. § 32.21 (West 2011). Appellant had attempted to use a forged $100 bill to pay for shoes in a Mineral Wells store. The trial court assessed a sentence of confinement for five years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $3,000. Appellant raises two points of error on appeal: (1) the trial court abused its discretion when it took into consideration during punishment an unadjudicated offense that had been dismissed and (2) the trial court violated due process by failing to provide an impartial forum for the assessment of punishment. We affirm.

*Background Facts*

On September 6, 2011, appellant's case was called for trial. Prior to jury selection, appellant waived his right to a jury trial and entered his plea of guilty to the offense of intentional possession with intent to pass a forged $100 bill. *See* Section 32.21. He was duly admonished, and the trial court accepted his plea.

On September 16, 2011, the trial court continued the trial. The court took note of the prior proceedings on September 6, reviewing the steps taken in the prior proceeding to make certain that appellant's guilty plea was voluntarily made. The State then presented its evidence: the guilty plea memorandum signed by appellant, the arrest report of the officer at the Mineral Wells Police Department, and the counterfeit $100 bills recovered at the time of appellant's arrest.

According to the arrest report, appellant and William Bell Harris had attempted to pass a forged $100 bill at Bealls department store in Mineral Wells. Harris identified himself to the police officer, but appellant gave a false name. Appellant confirmed his correct name when the officer found appellant's driver's license in appellant's wallet. Appellant had four more counterfeit $100 bills in his wallet. Harris did not have any other forged bills. The bills appeared to have originally been $5 bills that had been altered; all the counterfeit bills had the same serial number. Because the officers found Dairy Queen cups and a bag in their car, the officers contacted the Dairy Queen in Mineral Wells and learned that two white males had given it a counterfeit $100 bill.

After the introduction of the exhibits, the State rested. Appellant testified in his own behalf. He first acknowledged that he had filed a written application to the court for community supervision and had asked the court to defer an adjudication of guilt. Since his arrest, appellant had been working in the oilfield. At the time of the hearing, he worked for Patterson Energy as a driller in New Mexico, working seven days on and seven days off. Appellant had married and had a little boy who was eighteen months old. He explained how a conviction would adversely affect his opportunities for advancement with the company. At the time of trial, he had an opportunity to be promoted to rig manager. He testified that the company had posted a surety in the amount of $2 million to protect the company if he made a mistake as a driller. Appellant concluded by stating that he would meet and comply with any terms of probation ordered by the court.

The State only asked four questions during cross-examination. They concerned his probation for an earlier misdemeanor DWI. Appellant said that he did well on probation, that he would benefit from probation in this case, and that he would follow all the rules if given probation.

The trial court then began questioning appellant. The court first asked appellant how the counterfeit bills came into existence. Appellant stated that he had worked for a man in Sanger who owed him $1,400; the man had paid him with six $100 counterfeit bills. The trial court then asked the State if anything had become of the "Dairy Queen incident," apparently referring to the $100 counterfeit bill given to the Dairy Queen. The State advised the court that it did not believe anything had been filed and that appellant may have given the Sanger man's name to the detectives when he spoke with the detectives concerning the Dairy Queen incident.

The trial court asked how many counterfeit bills appellant had received from the man in Sanger, and appellant replied that he had received six. The court then stated that it was apparent from the arrest report that appellant knew that the bills were counterfeit and asked if that was correct. Appellant replied, "I had a suspicion, Your Honor." The court's reaction was, "[T]hey have the same serial number on every bill. Doesn't take a genius to figure that out." The court then asked how the man in Sanger paid for the rest of the work that appellant did, and appellant said he had not received the balance.

The trial court then admonished appellant about the seriousness of appellant's offense and stated that, if everyone went around passing fake United States currency, it would not take long for the foundation of our economic system to crumble. The court then asked about Harris, and appellant told the court that Harris was in confinement. The State informed the court that Harris had pleaded guilty and received a sentence of confinement for five years. And appellant's attorney added that Harris also had a prior felony conviction.

At that point, the court asked appellant, "What became of your charge for aggravated sexual assault of a child?" Appellant replied that it was dismissed. The court asked why, and appellant stated, "It was bad allegations." The court then asked, "How old was the alleged victim?" Appellant responded, "16."

The court pointed out that appellant's earlier probation had to be amended twice. Appellant explained that, while he was on probation for the DWI conviction in 2006, he had lost his employment and had to have two extensions before he could complete his probation. The

3

court stated that it was not certain if appellant fully understood that forgery of United States currency was a serious offense. Appellant responded that he had made a mistake. The court agreed and found appellant guilty of the offense alleged in the indictment.

The court then asked if the State had any additional evidence concerning punishment, and the State stated that it did not. Appellant also had no additional evidence.

*Analysis*

Appellant's two points of error center on the trial court's questions concerning appellant's arrest for aggravated sexual assault. Prior to trial, the State's notice of intent to introduce evidence of other crimes, wrongs, or acts (adjudicated or unadjudicated) during guilt/innocence and punishment phases included only the 2008 conviction of appellant for driving while intoxicated. The State had not listed the aggravated sexual assault charge as an extraneous offense, and there is nothing in the record providing a basis for the trial court's questions. We assume that the charge had been dismissed, otherwise the State would have listed it in the notice. Although appellant states that the trial court's inquiry concerning appellant's arrest occurred during the punishment phase of the trial, the court's inquiry occurred during the continuation of the guilt/innocence phase.

Appellant's points are that the trial court abused its discretion in considering the unadjudicated offense of aggravated sexual assault of a child when assessing appellant's punishment and that the trial court violated due process when it deprived appellant of an impartial forum on punishment. Appellant points out that he had no prior felony, yet he received the same punishment as Harris. In addition, appellant had married, had worked hard to be a productive citizen, and now had a child to support. The State responds that there is no evidence in the record that the trial court considered appellant's prior arrest when assessing punishment.

Although the State is correct, the trial court erred when it went outside the evidence in the record in its questioning of appellant. Unadjudicated extraneous offenses cannot be considered by the factfinder during the punishment phase unless the State proves beyond a reasonable doubt that the acts or offenses are attributable to the defendant TEX. CODE CRIM. PROC. ANN. art. 37.07, § (3)(a) (West Supp. 2012); *see Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). The same is true during the guilt/innocence phase. Although neither TEX. PENAL CODE ANN. § 31.03(c)(1) (West Supp. 2012) nor TEX. R. EVID. 404(b) explicitly provides that extraneous offense evidence at the guilt/innocence phase must be proven beyond a reasonable

4

doubt, it is well established that such a requirement is implied. *George v. State*, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994); *Higginbotham v. State*, 356 S.W.3d 584, 591 (Tex. App.—Texarkana 2011, pet ref'd). Error in admitting evidence concerning extraneous offenses is reviewed under the standard for nonconstitutional error contained in Tex. R. App. P. 44.2(b). *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Rule 44.2(b) provides that an appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's substantial rights.

Under Rule 44.2, an appellate court may not reverse for nonconstitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining a defendant's conviction or punishment. *See Anderson v. State*, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006); *Aguirre-Mata v. State*, 125 S.W.3d 473, 474 (Tex. Crim. App. 2003).

Appellant's argument that the trial court took into consideration on punishment appellant's arrest and charge of sexual assault, which was dismissed, is only a speculative assumption. There is nothing in the record supporting that assumption. The trial judge in this case was experienced. The standard of admissibility for extraneous offense evidence — proof beyond a reasonable doubt — was well established. Appellant requested community supervision and deferred adjudication. It is clear from the record that the trial court considered the positive steps appellant had made in his life since his arrest for this offense, but was uncertain that appellant understood the seriousness of his offense.

In appellant's second point of error, he argues that Texas courts have found that a defendant's due process rights are violated when the full range of punishment is not considered. There is nothing in this record to demonstrate that the trial court did not consider the full range of punishment. The court explicitly acknowledged to appellant that he was being asked to consider community supervision and deferred adjudication. The court's punishment was within the range of punishment for a third-degree felony offense: two to ten years' confinement and a fine not to exceed $10,000.

The cases cited by appellant do not support his argument that he was denied due process. *Jefferson v. State*, 803 S.W.2d 470 (Tex. App.—Dallas 1991, pet. ref'd), involved a defendant who had been placed on deferred adjudication. The State filed a motion to proceed with adjudication of guilt because of the defendant's failure to pay fees and to report. The trial court,

over objection, questioned the defendant and reminded him that the court had warned him earlier that he would be assessed the maximum punishment of twenty years if he did not report and pay his probation fees. The court then found the defendant guilty and sentenced him to twenty years' confinement. The court of appeals reversed and remanded the cause, holding that the trial court had violated the defendant's due process rights by failing to consider the full range of punishment for the offense charged when he imposed a predetermined punishment period. *Id.* at 472.

*Earley v. State*, 855 S.W.2d 260 (Tex. App.—Corpus Christi 1993, pet. dism'd), also cited by appellant, involved a similar error by the same trial judge. The defendant had been placed on deferred adjudication on his burglary charges and on shock probation for his theft conviction. The State moved to revoke the defendant's probation in the theft case and moved to adjudicate his guilt in the two burglary cases after the defendant committed a new offense. When the trial judge had placed the defendant on probation, the judge had warned the defendant that if he violated his probation the defendant probably would be given a punishment at the top level of the punishment range. And, when the defendant appeared for the revocation and adjudication hearing, the judge told the defendant, "I'm just upset that you did a third-degree felony. I would rather have seen you with a first-degree, because I would like to give you life." 855 S.W.2d at 262. The court then assessed the maximum years of imprisonment for each offense and ordered the sentences to run consecutively.

Appellant's two points of error are overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL

JUSTICE

August 31, 2012

Do not publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.