301 P.3d 1255

STATE of Hawai'i, Respondent/Plaintiff–Appellee,

v.

Terrance E. ATWOOD, Petitioner/Defendant–Appellant.

No. SCWC–30337.

Supreme Court of Hawai'i.

June 3, 2013.

David A. Sereno, for petitioner/defendant-appellant.

Peter A. Hanano, for respondent/plaintiff-appellee.

NAKAYAMA, Acting C.J., ACOBA, McKENNA, and POLLACK, JJ., and Circuit Judge SAKAMOTO, in place of RECKTENWALD, C.J., Recused.

Opinion of the Court by NAKAYAMA, Acting C.J.

In this case involving an uncompleted home remodeling contract, we hold that breach of the contract alone does not suffice to establish probable cause to charge a defendant with Theft in the First Degree by deception where the record does not establish that the defendant did not intend to perform his part of the bargain nor otherwise deprive the complainant of property exceeding $20,000 in value.

In 2006, Petitioner/Defendant–Appellant Terrance E. Atwood entered into a contract with complainant Jenwei Luu, M.D. for the purpose of remodeling the bathrooms in Luu's house. Atwood represented to Luu that he was a licensed contractor when he was in fact not; after Luu discovered that Atwood was unlicensed, however, he decided to keep Atwood on the job because of the time and money already invested. Before the remodeling was completed, Luu fired Atwood due to a dispute regarding the purchasing of materials. After an investigation by the Regulated Industries Complaint Office (RICO) of the Department of Commerce and Consumer Affairs (DCCA), the State presented its case to a grand jury and obtained an indictment charging Atwood with one count of Theft in the First Degree and one count of Unlicensed Activity.

Atwood moved to dismiss the theft charge, arguing that the State's evidence presented to the grand jury did not demonstrate his intent not to perform his part of the contract and thus failed to establish probable cause

for the grand jury to indict him for theft. The Circuit Court of the Second Circuit[1] denied the motion but permitted Atwood to file an interlocutory appeal; the Intermediate Court of Appeals (ICA) affirmed the circuit court's denial of the motion. The ICA concluded that there was sufficient evidence for the grand jury to indict Atwood for first-degree theft given his misrepresentation to Luu that he was an unlicensed contractor, which thereby induced Luu to enter into a contract and pay Atwood $95,930 before ultimately firing him and hiring another contractor to finish the job.

On certiorari, Atwood makes the same arguments to this court in seeking dismissal of the theft charge. Because we agree with Atwood that the evidence in the record did not suffice to establish probable cause that he committed theft of property exceeding $20,000 in value, we conclude that the circuit court erred in denying his motion to dismiss the charge of Theft in the First Degree and that the ICA erred in affirming the circuit court's order denying the motion. Accordingly, we vacate the judgments of the circuit court and the ICA and remand this case to the circuit court with instructions to dismiss Count One of the indictment charging Atwood with Theft in the First Degree.

## I. BACKGROUND

### A. Grand Jury Proceedings

On October 12, 2007, the State filed an indictment returned by the Maui Grand Jury charging Atwood with one count of Theft in the First Degree in violation of Hawai'i Revised Statutes (HRS) § 708–830.5(1)(a)[2] and

---

1. The Honorable Richard T. Bissen, Jr. presided.

2. HRS § 708–830.5 (Supp.2006) provided then, as it does now, in pertinent part:

 **Theft in the first degree.** (1) A person commits the offense of theft in the first degree if the person commits theft:
 (a) Of property or services, the value of which exceeds $20,000[.]
 . . .
 (2) Theft in the first degree is a class B felony.

 Further, HRS § 708–830 (Supp.2006) provided then, as it does now, in pertinent part:
 **Theft.** A person commits theft if the person does any of the following:
 . . .
 (2) Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.
 Definition and discussion of the terms "deception" and "deprive" appear *infra*.

one count of Unlicensed Activity in violation of HRS § 436B–27(b).[3]

According to testimony given before the grand jury on October 12, 2007 and the findings of fact entered on December 16, 2009, Luu hired Atwood as a contractor to remodel the bathrooms in his home in Kihei. Atwood had been referred to Luu by one of Luu's friends and presented himself as a licensed contractor; Atwood also showed Luu two job sites representing his work, but Luu later learned that one of the sites was not Atwood's. On May 14, 2006, Luu and Atwood signed a contract that had been drafted by Atwood at the agreed price of $89,394, and Atwood thereafter began the remodeling work.

Due to concerns about delays and work quality, Luu contacted DCCA on January 26, 2007; DCCA informed Luu that Atwood was not a licensed contractor and furthermore that the license number Atwood gave Luu belonged to a contractor on the island of Hawai'i. Nevertheless, Luu explained that he kept Atwood on the job because

> by that time we had already paid him that $95,000[4]. We were just too far into it. He kept assuring us that he would finish. We at that time had already started looking into our options, talking to lawyers on what we can do to get him to finish. And all of the lawyers we talked to have told us that we were basically at his mercy, we have to wait for him to finish. So that's why we had to continue.

On February 26, 2007, Luu had Atwood meet him at the plumbing store where Atwood was supposed to have ordered certain plumbing materials. Luu reviewed several items with Atwood that Atwood had not purchased al-though Luu had already paid him to do so; because Atwood refused to buy the materials at that meeting at Luu's request, Luu fired Atwood that day and hired another contractor to finish the job at an additional cost of at least $38,000.

The grand jury also heard the testimony of Robert Hottenstein, the supervising investigator for DCCA's Maui RICO office. Hottenstein testified that Atwood had never held a valid contractor's license in Hawai'i and that the license number Atwood provided to Luu actually belonged to someone else who said he did not know Atwood, had never met Atwood, and had not given Atwood permission to use his license. Hottenstein also stated that for the purpose of determining how much money Atwood received from Luu, Luu submitted twenty-two cancelled checks totaling approximately $78,000. Hottenstein further stated that he sent a letter to Atwood asking a series of questions; Atwood submitted a written response establishing that the value of his work was over $1,000, the threshold for which state law requires a contractor's license.

## B. Motion to Dismiss Count One

On October 28, 2009, Atwood filed a motion to dismiss Count One of the indictment, the charge of Theft in the First Degree, for lack of probable cause and as a de minimis offense.[5] In an extensive memorandum in support of the motion, Atwood stressed that nonperformance of the remodeling contract in this case could only give rise to a civil breach-of-contract action between Atwood and Luu and could not establish criminal liability for the offense of theft by deception. In that regard, Atwood noted that criminal

---

3. HRS § 436B–27 (Supp.2006) provided then, as it does now, in pertinent part:

> **Civil and criminal sanctions for unlicensed activity; fines; injunctive relief; damages; forfeiture.**
>
> . . .
>
> (b) Any person, who engages in an activity requiring a license issued by the licensing authority and who fails to obtain the required license, or who uses any word, title, or representation to induce the false belief that the person is licensed to engage in the activity, other than a circumstance of first instance involving the inadvertent failure to renew a

previously existing license, shall be guilty of a misdemeanor and be subject to a fine of not more than $1,000 or imprisoned not more than one year, or both, and each day's violation shall be deemed a separate offense.

4. Although the contract price was $89,394, Luu had paid Atwood a total of $95,930, including cost overruns, as of the time Atwood was fired.

5. Although Atwood argued de minimis as an alternate ground for dismissal, he did not preserve that argument in the ICA or in this court; consequently, it is not discussed.

liability for theft can attach when an actor receives something of value in return for a contractual promise but has no intention of fulfilling his or her part of the contract. Accordingly, absent the actor's specific intent not to fulfill the contract, nonperformance or midperformance breach of the contract alone cannot result in any criminal liability. Atwood thus argued that the grand jury lacked probable cause to return an indictment in Count One because it was not presented with evidence sufficient to establish that Atwood entered into a contract with Luu with an intention not to fulfill his obligations to Luu under that contract.

The State argued in opposition that the definition of "deception" in HRS § 708–800[6] is met not only when a defendant intends not to perform a promise, but also when the defendant "[c]reates or confirms another's impression which is false and which the defendant does not believe to be true" or "[f]ails to correct a false impression which the person previously has created or confirmed[.]" (Quoting HRS § 708–800). The State further argued that "Doctor Luu's reliance on [Atwood]'s representation that he was a licensed contractor was a matter of pecuniary significance[ ]" and therefore that Atwood did not fall within the exception delineating that "deception" "does not … include falsity as to matters having no pecuniary significance[.]" (Quoting HRS § 708–800).

In response, Atwood disputed the State's contention that he had "created a false impression of a matter of pecuniary signifi-

cance." He reiterated his contention that theft by deception is only applicable to contract disputes where the defendant had no intention of performing the promised contractual obligations at the time of formation of the contract, and therefore that "[a]ny misrepresentations not accompanied by the specific intent not to perform the contract do not implicate criminal law."

The circuit court held a hearing on Atwood's motion to dismiss on December 2, 2009 and denied the motion after argument from both parties. The court then filed its Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss Count One on December 16, 2009, entering the following relevant conclusions of law:

3. "Deception" occurs when a person knowingly: (1) creates or confirms another's impression which is false and which the defendant does not believe to be true; or (2) fails to correct a false impression which he previously has created or confirmed. The term "deception" does not include falsity as to matters having no pecuniary significance. Section 708–800, H.R.S.

4. A contract is an agreement between two or more persons which creates an obligation to do or not do something. A contract may be oral or written. A contract requires proof of all of the following elements: persons with capacity and authority to enter into the contract; and an offer; and an acceptance of that offer producing a mutual agreement, or a meeting

---

**6.** HRS § 708–800 (1993) provides, in pertinent part:

"Deception" occurs when a person knowingly:
(1) Creates or confirms another's impression which is false and which the defendant does not believe to be true;
(2) Fails to correct a false impression which the person previously has created or confirmed;
(3) Prevents another from acquiring information pertinent to the disposition of the property involved;
(4) Sells or otherwise transfers or encumbers property, failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of the property, whether that impediment is or is not valid, or is or is not a matter of official record; or

(5) Promises performance which the person does not intend to perform or knows will not be performed, but a person's intention not to perform a promise shall not be inferred from the fact alone that the person did not subsequently perform the promise.
The term "deception" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed. "Puffing" means an exaggerated commendation of wares or services in communications addressed to the public or to a class or group.
(Emphasis added).

of the minds, between the persons as to all the essential elements of the agreement at the time the offer was accepted; and consideration. Hawaii Civil Jury Instructions, Number 15.1, 1999 Edition [including Instructions Received through January 1, 2009].

5. Fraudulent inducement to enter a contract is shown when: (1) there was representation of a material fact; and (2) the representation was false when it was made; and (3) the party making the representation either knew that it was false when it was made or was reckless in making the representation without knowing that it was true or false; and (4) that the party intended that the other party relied upon the representation; and (5) that the party relied upon the representation by entering into the contract; and (6) the reliance upon the representation was reasonable. Hawaii Civil Jury Instructions, Number 15.27.

6. The [c]ourt finds that there is sufficient probable cause to support the charge in Count One, Theft in the First Degree, by deception, in violation of Section 708–830.5, H.R.S. The [c]ourt finds that Dr. Luu did not enter into a valid contract with [Atwood]. [Atwood] deceived or fraudulently induced Dr. Luu to enter into the agreement of May 14, 2006, because [Atwood]: (1) fraudulently represented that he was a licensed contractor; (2) gave a license number that belonged to another individual on the Big Island; and (3) showed off remodeling projects at other locations that were not his projects, in essence, passing off the work of others as his own work.

7. The [c]ourt further finds that there is sufficient evidence before the Grand Jury that Doctor Luu's reliance on [Atwood]'s representation that [Atwood] was a licensed contractor was a matter of pecuniary significance, and that but for [Atwood]'s representation, Dr. Luu would not have entered into the contract and paid [Atwood] any money. The [c]ourt notes that Dr. Luu's reliance on [Atwood]'s representation that he was a licensed contractor was reasonable. Parties who contract with licensed contractors, as opposed to unlicenced [sic] builders, are entitled to

some relief when there is injury by any act, representation, transaction, or conduct of a duly licensed contractor. [See, e.g., Section 444–26 H.R.S. which established a Contractors [sic] recovery fund; *Graham Construction Supply, Inc. v. Schrader Construction, Inc.*, 63 Haw. 540, 632 P.2d 649, (1981); *Educators Ventures, Inc. v. Bundy*, 3 Haw.App. 435, 652 P.2d 637. (1982); *Kuhnert v. Allison*, 76 Hawaiʻi 39, 868 P.2d 457, (1994) ].

(Some brackets in original and some added). On January 5, 2010, Atwood filed an application for interlocutory appeal from the order denying his motion to dismiss Count One; the circuit court granted the application on January 26, 2010. Atwood timely filed his notice of appeal on February 12, 2010 pursuant to the circuit court's extension of time to file such notice to February 14, 2010.

## C. The ICA's May 17, 2012 Summary Disposition Order

On interlocutory appeal to the ICA, Atwood's sole point of error was that the circuit court erred by denying his motion to dismiss the charge of Theft in the First Degree in Count One of the indictment. As he did in the circuit court, Atwood contended that the evidence presented by the State to the grand jury did not suffice to establish that Atwood did not intend to fulfill his contractual obligations to Luu when they made their contract, or at anytime thereafter; consequently, there was no evidence to support the State's position that Atwood had committed theft by deception simply by accepting Luu's money. Atwood stressed that at most, "rather than theft by deception, the evidence before the grand jury showed the possible existence of a civil contract dispute."

The State argued in opposition that the grand jury had sufficient facts to support its finding of probable cause; thus, Atwood was properly charged with Theft in the First Degree under a theory of theft by deception. The State added that a defendant may be charged with theft by deception even in situations where civil contractual obligations are involved, citing *State v. Gaylord*, 78 Hawaiʻi 127, 890 P.2d 1167 (1995), and *State v. Borochov*, 86 Hawaiʻi 183, 948 P.2d 604 (App.

1997). In the present case, the State argued that the grand jury was presented with sufficient evidence to show that Atwood had misrepresented his license status, and that in doing so he was able to enter into the contract with Luu; therefore, "Atwood acted willfully and by deception to induce the contract and obtain payment thereunder." (Citing *State v. Souza,* 119 Hawai'i 60, 73, 193 P.3d 1260, 1273 (App.2008)).

The ICA affirmed the circuit court's December 16, 2009 order denying Atwood's motion to dismiss Count One. *State v. Atwood,* No. 30337, 127 Hawai'i 241, 277 P.3d 335, 2012 WL 1764084, at *4 (App. May 17, 2012) (SDO). The ICA concluded that probable cause existed to indict Atwood for Theft in the First Degree because Atwood misrepresented that he was a licensed contractor and Luu relied on this misrepresentation, entered into a remodeling contract with Atwood, and paid Atwood $95,930 before ultimately terminating him. *Id.* at *2. Relying on the definition of "deception" found in HRS § 708–800, the ICA noted that "Atwood knowingly created an impression that he was a licensed contractor by stating that he was a licensed contractor." *Id.* Based on this misrepresentation, Luu entered into a contract that he otherwise would not have and gave Atwood a total of $95,930. *Id.* Accordingly, the ICA concluded that this constituted sufficient evidence to support the indictment. *Id.*

In response to Atwood's argument that "there was no proof that he did not intend to perform the contract when it was made[,]" the ICA agreed with the State and noted that Atwood's argument "ignore[d] sections 1 and 2 of the definition of deception which prohibits creating or confirming an impression which is false." *Id.* at *3. Although a contract may have existed between Atwood and Luu, the ICA noted that the existence of a contract did "not foreclose criminal liability for other means of deception as specified by HRS § 708–800." *Id.* Accordingly, in the ICA's view, "evidence that Atwood did not intend to perform the contract at the time it was made [wa]s not required to indict Atwood for Theft in the First Degree under the theory asserted by the prosecution." *Id.*

The ICA also rejected Atwood's argument that the provisions of HRS chapters 436B and 444 were sufficient to regulate contractors and that the penalties provided in those chapters are distinct from the crimes enumerated in the Hawai'i Penal Code. *Id.* Rather, the ICA pointed to an Ohio case holding that the statute barring a person from holding oneself out as an attorney without having been licensed did not preclude prosecution of that person for theft by deception. *Id.* (citing *State v. Brown,* 108 Ohio App.3d 489, 671 N.E.2d 280, 282 (1995)). Thus, in the present case, the fact that Atwood falsely held himself out as a licensed contractor did not prohibit simultaneous prosecution for theft; as the ICA also noted, theft by deception "requires obtaining or exerting control over property of another by deception, something that is not required to establish a violation of HRS [c]hapters 436B or 444." *Id.* at *4.

The ICA entered judgment on June 25, 2012. Atwood timely filed his application on August 24, 2012, and the State timely filed a response to the application on September 10, 2012.

## II. STANDARD OF REVIEW

### A. Sufficiency of Evidence to Support Grand Jury Indictment

"A grand jury indictment must be based on probable cause." *State v. Okumura,* 59 Haw. 549, 550, 584 P.2d 117, 119 (1978). Probable cause is established by "a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." *State v. Chung,* 75 Haw. 398, 409–10, 862 P.2d 1063, 1070 (1993). "The evidence to support an indictment need not be sufficient to support a conviction." *State v. Ganal,* 81 Hawai'i 358, 367, 917 P.2d 370, 379 (1996). "In reviewing the sufficiency of the evidence to establish probable cause before the grand jury, 'every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment and neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for [that of] the Grand Jury.'" *Id.* (quoting

*State v. Kuba*, 68 Haw. 184, 191, 706 P.2d 1305, 1310–11 (1985)).

*State v. Ontai*, 84 Hawai'i 56, 63, 929 P.2d 69, 76 (1996).

## III. DISCUSSION

As he did to the circuit court in support of his motion to dismiss and to the ICA on appeal from denial of that motion, Atwood argues to this court that there is no evidence in the record that he intended to deprive Luu of the value of any property by accepting Luu's money without fulfilling his part of the remodeling contract. Accordingly, Atwood maintains that the State did not establish probable cause to enable the grand jury to return an indictment, at least with respect to Count One charging him with Theft in the First Degree.

In response, the State essentially argues that the ICA properly affirmed the circuit court's order because there was sufficient evidence before the grand jury to find probable cause for a charge of Theft in the First Degree. In fact, the State argues that "[Atwood] does not appear to contest that there was sufficient evidence of probable cause presented to the grand jury for all of the elements of Theft in the First Degree, *except* for the intent to deprive element." (Emphasis in original). With respect to the intent to deprive[7] element, the State submits that "there was evidence of [Atwood]'s intent to deprive *both* at the formation and performance stages of the contract." (Emphasis in original). At the time of contract formation, Atwood had falsely represented to Luu that he was a licensed contractor and that he had completed other projects on Maui; as a result of hiring Atwood based on these misrepresentations, Luu paid Atwood a total of $95,930. Further, evidence was presented that during the performance of the contract, Atwood did not buy certain supplies needed

for the job and even asked Luu for additional money to buy supplies that should have already been purchased. The State thus concludes that "in drawing every legitimate inference from the evidence before the grand jury in favor of the indictment, there was a state of facts that would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of guilt of [Atwood] for the offense of Theft in the First Degree."

 We agree with Atwood that where a defendant is charged with theft by deception in a situation involving a contract, the intent element of the crime is not met where evidence shows that the defendant performed, or intended to perform, his or her part of the contract; conversely, the intent element is satisfied only when the defendant intends not to perform his or her contractual obligations. Subsequent breach of the contract may give rise to potential civil remedies grounded in contract law, but unless accompanied by the intent to deprive the complainant of the value of his or her property, such breach does not create criminal liability for theft. We further conclude that, based on Atwood's performance of his part of the contract and the failure of the State to produce evidence of the value of the work completed by Atwood, the State failed to establish that Atwood deprived Luu of property exceeding $20,000 in value, the threshold for first-degree theft. Accordingly, we conclude that the circuit court erred in not dismissing Count One of the indictment.

### A. The circuit court erred in denying Atwood's motion to dismiss because there was no evidence to show that Atwood intended to deprive Luu of the value of any property

The main thrust of Atwood's argument has consistently been that in order to establish

---

7. HRS § 708–800 (1993) provides, in pertinent part:

"Deprive" means:
(1) To withhold property or cause it to be withheld from a person permanently or for so extended a period or under such circumstance that a significant portion of its economic value, or of the use and benefit thereof, is lost to the person; or
(2) To dispose of the property so as to make it unlikely that the owner will recover it; or

(3) To retain the property with intent to restore it to the owner only if the owner purchases or leases it back, or pays a reward or other compensation for its return; or
(4) To sell, give, pledge, or otherwise transfer any interest in the property; or
(5) To subject the property to a claim of a person other than the owner.

probable cause for a charge of theft by deception, the State must present evidence that Atwood entered into a contract with Luu and intended to deprive Luu of the value of Luu's property by accepting payment without performing his part of the contract. The commentary to the theft statutes in the Hawai'i Penal Code reflects this general statement of the law: "With respect to contractual obligations, a present intent not to perform would constitute deception, although mere breach at some future time, without such present intent, would not." HRS § 708–833 cmt. (1993).[8]

We also find support for Atwood's position in several of the cases he has cited. In *Smith v. State*, for example, Smith contracted with the complainant to screenprint T-shirts and accepted complainant's money, but was ultimately unable to produce the shirts despite making some efforts. 665 So.2d 1002, 1003 (Ala.Crim.App.1995). On appeal, the Alabama Court of Criminal Appeals reversed Smith's theft conviction, concluding that "[Smith] correctly allege[d] that the State failed to prove the element of intent to deprive the owner of her property as alleged in the indictment." *Id.* at 1002 (citing Ala. Code § 13A8–2(1) (1975)). As relevant to this discussion, the court also noted that Smith "failed to perform a contractual obligation he had with the victim, and as such, his actions constitute, if anything, a breach of contract, which merits a civil remedy." *Id.* at 1004 (emphasis added).

In *Commonwealth v. Layaou*, the Pennsylvania Superior Court reversed Layaou's conviction for theft by deception in a home remodeling case after he began but then failed to complete the job, forcing complainants to hire another contractor at additional cost. 266 Pa.Super. 411, 405 A.2d 500, 501 (1979). The court noted that the initial expenditure of money and manpower "d[id] not support a finding that [Layaou] never intended to perform; if anything, it more strongly support[ed] a finding that [Layaou] intended to perform originally but for some reason later abandoned the job." *Id.* The *Layaou* court also noted that "[t]he [complainants'] claims against him are more appropriately resolved in a civil action." *Id.* at 502. The same court reversed another conviction for theft by deception based on an unfinished home remodeling contract where the defendant began but did not return to finish the job. *See Commonwealth v. Bentley*, 302 Pa.Super. 264, 448 A.2d 628 (1982). There, the court held that "the record fail[ed] to show any evidence as to appellant's intent except his failure to perform. This alone is insufficient." *Id.* at 631.

In a relatively recent case from South Dakota, Kent Jackson was found guilty of grand theft by deception after failing to complete a commercial roof installation for a variety of reasons. *State v. Jackson*, 765 N.W.2d 541, 542–44 (S.D.2009). In reversing Jackson's conviction, the South Dakota Supreme Court concluded that his failure to perform resulted from conduct and happenstance occurring subsequent to formation of the roofing contract: "The State provided no evidence indicating that, at the time Jackson received the down payment from [the complainant], Jackson had the intent to deceive him of his property .... Jackson's misfortune of bad luck, unavoidable delays, and

---

8. Although Atwood argues, and many cases and treatises confirm, that the defendant's intent to deprive must exist at the time of formation of the contract between the defendant and the complainant, we also note that the intent to deprive may also be formed subsequent to contract formation. See, e.g., *Ehrhardt v. State*, 334 S.W.3d 849, 856 (Tex.App.2011) ("The requisite criminal intent can be formed after the formation of a contract."); *Higginbotham v. State*, 356 S.W.3d 584, 588 (Tex.App.2011) (citing *Ehrhardt*, 334 S.W.3d at 856) (footnote omitted) ("Although there was no evidence presented that Higginbotham possessed the requisite criminal intent at the time the contract was formed, this [c]ourt has held that the requisite intent can be formed after the formation of a contract."); *State v. Frost*, 99 So.3d 1075, 1080–81 (La.App.2012) (noting that "a defendant can form an intent to steal after taking possession of property through honest means" and "the timing of a defendant's intent to deprive permanently is inconsequential, and the inquiry into that intent should focus only on whether such an intent was actually formed"). Regardless of when the defendant forms the intent to deprive, however, "the deprivation of property cannot occur prior to the formation of the requisite intent." *Higginbotham*, 356 S.W.3d at 588 (citing *Ehrhardt*, 334 S.W.3d at 856; *Cortez v. State*, 582 S.W.2d 119, 120–21 (Tex.Crim.App.1979)).

perhaps not the ideal characteristics of a businessman do not equate to a specific intent to deprive [the complainant] of his money." *Id.* at 547–48 (emphasis added).

Finally, in a recently decided case, the Maryland Court of Appeals affirmed the judgment of the Maryland Special Court of Appeals reversing Leon Coleman's conviction on eight counts of theft by deception. *State v. Coleman*, 423 Md. 666, 33 A.3d 468 (2011), aff'g 196 Md.App. 634, 11 A.3d 326 (2010). In that case, prospective homebuyers paid Coleman to purchase unimproved lots in a subdivision and then construct houses on those lots; the project failed because Coleman could not obtain required permits and ran out of the homebuyers' money before any houses could be constructed. *Id.* at 470–71. In affirming the reversal of Coleman's conviction, the court noted that Coleman "gave value, i.e. conveyed the lots, for the money he received in the way of advances to pay for the lots, as provided under the contracts[,]" and that Coleman had been working to draft floor plans and obtain necessary building permits. *Id.* at 474. Thus, "Coleman's actions between the time of contract and the arrest manifested his intent to perform[,]" and "[t]here was insufficient evidence of intentional deprivation to support Coleman's theft convictions[.]" *Id.* at 474, 478.

As in the cited cases, we agree with Atwood that probable cause did not exist to charge him with theft by deception because the State did not present any evidence to the grand jury to show that Atwood entered into a contract with Luu intending to obtain Luu's money without performing his part of the contract. Cf. HRS § 708–833 cmt. ("It should be noted that in all theft offenses, the requisite mental state is intent to deprive the owner of the value of property or services."). On the contrary, the evidence available to us shows that Atwood expended substantial time and effort on the project between May 2006 and February 2007. While some of the evidence suggested that Atwood's work was not of the best quality, Atwood substantially performed what he promised to do according

to the contract; any shortcomings in his work product are a matter of civil, not criminal, law. Further, Atwood did not fully complete the job because Luu fired him due to a contractual dispute over the purchase of materials; the firing did not appear to implicate other potential factors such as the quality of Atwood's work or his status as an unlicensed contractor. Moreover, Atwood did not prematurely abandon the job or disappear without out a means to be contacted, as the defendants did in the cases we have cited from other jurisdictions.[9]

Because Atwood may have induced Luu to enter the contract by representing himself as a licensed contractor when in fact he has never been so licensed in this state, the State maintains that Atwood therefore obtained Luu's money by deception as that term is defined in HRS § 708–800; ultimately, however, we reach the same result that probable cause did not exist to support the theft charge. Atwood notes that any misrepresentation on which a theft charge is based must be accompanied by the intent to deceive. He therefore relies on the case law addressing theft by deception, only some of which we have cited above, as well as definition (5) of "deception" in HRS § 708–800, which provides that deception "occurs when a person knowingly . . . [p]romises performance which the person does not intend to perform or knows will not be performed, but a person's intention not to perform a promise shall not be inferred from the fact alone that the person did not subsequently perform the promise."

In contrast, the State has relied on definition (1), which provides that deception occurs when a person knowingly "[c]reates or confirms another's impression which is false and which the defendant does not believe to be true[,]" and definition (2), which provides that deception occurs when a person knowingly "[f]ails to correct a false impression which the person previously has created or confirmed[.]" (Quoting HRS § 708–800).

---

9. Again, we note that, despite their abandonment of or inability to complete their respective projects, the defendants in the cited cases all had their convictions reversed because there was ultimately no evidence that they possessed the intent not to perform their contractual obligations, and in many cases there was in fact evidence of substantial performance.

Therefore, according to the State's theory of the case, which the ICA adopted in its SDO,

> Atwood knowingly created an impression that he was a licensed contractor by stating that he was a licensed contractor. Based on Atwood's misrepresentation of being a licensed contractor, Luu agreed to hire Atwood. Luu then gave Atwood money totaling $95,930.00. There was sufficient evidence to indict Atwood for theft in the first degree.

*Atwood*, 2012 WL 1764084, at *2. Respectfully, we disagree with the State's position because, as Atwood notes, any misrepresentation on which a theft charge is based must be accompanied by the intent to deceive. Atwood thus maintains that the State has incorrectly conflated these two requirements by arguing that Atwood induced Luu into entering the contract by misrepresenting himself to be a licensed contractor, and therefore under definitions (1) and (2) of "deception," any money paid to Atwood under the contract would support the theft by deception charge. Taken to its logical end, though, the State's position would require us to conclude that had Luu paid Atwood the total cost of the remodeling work, and had Atwood been allowed to complete the job, Atwood would nevertheless have committed theft by deception at the same time he completed performance of the contract, simply because of his initial misrepresentation that he was licensed. We do not agree that a defendant can be charged with theft in such a situation. Rather, we agree with Atwood's position that there must be evidence showing that he intended to deprive Luu of Luu's property notwithstanding the misrepresentation concerning his status as a licensed contractor. See *Evans v. State*, 508 So.2d 1205, 1208 (Ala.Crim.App.1987) (citing Ala.Code § 13A–8–2(2) (1975)) ("Yet, deception, unaccompanied by an intent to deprive the owner of its property, is not theft.").

Thus, while the State presented evidence that Luu hired Atwood based on his ultimately false representations concerning his license status and his prior work product, there was no evidence presented to indicate that Atwood intended to deprive Luu of the value of any property. Rather, the State's evidence actually showed that Atwood performed his part of the contract until he was no longer permitted to do so by virtue of being fired by Luu. Accordingly, the State's evidence did not suffice to establish probable cause for the grand jury to return an indictment charging Atwood with Theft in the First Degree by deception.

**B. The circuit court also erred in denying Atwood's motion to dismiss because the State did not establish that Atwood satisfied the threshold for Theft in the First Degree by depriving Luu of property exceeding $20,000 in value**

We also note that the State specifically sought an indictment from the grand jury charging Atwood with committing one count of Theft in the First Degree. Under HRS § 708–830.5(1)(a), "[a] person commits the offense of theft in the first degree if the person commits theft ... [o]f property or services, the value of which exceeds $20,000[.]" However, the evidence presented to the grand jury did not actually establish the value of the property allegedly wrongfully obtained by Atwood; consequently, Count One of the indictment should have been dismissed because the State did not meet its burden of establishing probable cause that Atwood committed theft of over $20,000 from Luu.

Pursuant to their contract, Luu paid money to Atwood over a period of several months and received the benefit of Atwood's remodeling work in return. However, the record does not indicate a specific dollar amount for the value of the remodeling services actually performed by Atwood between May 2006 and February 2007.

In the State's view, because Luu would not have hired Atwood had he known Atwood's representations were false, any money that Luu subsequently paid to Atwood pursuant to the contract was obtained by deception and would therefore count toward the $20,000 threshold for charging Atwood with Theft in the First Degree. Accordingly, Atwood would have met that threshold amount whether the $89,394 contract price, the $95,390 total price with overruns, or the

$78,000 amount representing the cancelled checks Luu submitted to DCCA was used.

While these figures all far exceed the $20,000 threshold for charging Atwood with Theft in the First Degree, the State's evidence to the grand jury did not show what exact amount of the total sum Luu paid to Atwood qualified as a deprivation of Luu's property as opposed to simply being payment for services actually rendered. The State also did not present any evidence showing that Atwood otherwise deprived Luu of the value of Luu's property by, for example, spending the money on himself or on items not related to the remodeling.

As another alternative, the State argued that the $20,000 threshold was met because Luu subsequently paid $38,000 to a replacement contractor to complete the construction after he fired Atwood. However, because there is no evidence of the value of the work that was done by Atwood, the amount paid to the replacement contractor is immaterial and cannot support the conclusion that Atwood intended to deprive Luu of the value of that specific amount of money; accordingly, we cannot agree with the State's argument.

As we recently stated:

[I]n order for the grand jury to have found probable cause to support Taylor's indictment for first degree theft, the State must have produced evidence of each essential element of the offense. See *Ontai*, 84 Hawai'i at 64, 929 P.2d at 77. This court has held that there are three material elements for theft in the first degree under HRS §§ 708–830(1) and 708–830.5(1)(a): that "the defendant intended to: (2) deprive the other of his or her property; and (3) deprive another of property that exceeds $20,000 in value." *State v. Duncan,*

101 Hawai'i 269, 279, 67 P.3d 768, 778 (2003).

*State v. Taylor*, 126 Hawai'i 205, 218, 269 P.3d 740, 753 (2011). In this case, although the State posited several different amounts of money paid to Atwood that it argues would have satisfied the $20,000 threshold for first-degree theft, all of those amounts reflected payments made by Luu to Atwood in exchange for the remodeling work that was actually completed between May 2006 and February 2007. Because there was no showing that any of the money paid to Atwood was *not* in exchange for the remodeling work that Atwood actually performed, the State therefore did not provide the grand jury with any specific amount of property of which Luu was allegedly unlawfully deprived.

Accordingly, the State did not present evidence sufficient to establish probable cause that Atwood committed the offense of Theft in the First Degree, and the circuit court should have therefore dismissed Count One of the indictment.

## IV. CONCLUSION

Based on the foregoing, we vacate the ICA's June 25, 2012 Judgment on Appeal and the circuit court's December 16, 2009 Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Dismiss Count One, and we remand this case to the circuit court with instructions to dismiss Count One of the indictment.